# EXHIBIT A

Complaint

FILED
2022 SEP 22 03:58 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 22-2-15374-1 SEA

**SUPERIOR COURT OF WASHINGTON FOR KING COUNTY**

| | |
|---|---|
| MARSHALL HORWITZ, DAVID LAYTON, RICHARD JOHNSON, and a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF WASHINGTON, an agency of the STATE OF WASHINGTON,<br><br>Defendant. | No. _____<br><br>**CLASS ACTION COMPLAINT** |

**PARTIES**

1.      The plaintiffs are Marshall Horwitz, David Layton, Richard Johnson, and a class of similarly situated individuals.  The plaintiffs are faculty and staff at the University of Washington who are enrolled in the University of Washington Retirement Plan.  Defendant is the University of Washington, the plan sponsor and an agency of the State of Washington.

**VENUE**

2.      The facts giving rise to plaintiffs' claim occurred in King County, Washington.

3.      Venue is proper in King County Superior Court under RCW 4.12.020.

**FACTS RELATED TO THE UNIVERSITY OF WASHINGTON RETIREMENT BENEFITS**

4.      The University of Washington provides retirement benefits to faculty members through the University of Washington Retirement Plan (UWRP) and the University of

CLASS ACTION COMPLAINT  -  1

BENDICH, STOBAUGH & STRONG, P.C.
126 NW CANAL STREET, SUITE 100
SEATTLE, WASHINGTON  98107
(206) 622-3536

\Horwitz\Pldgs\Summons 09-22-22

1  Washington Voluntary Investment Program (UWVIP or simply VIP).

2      5.      The UWRP is a mandatory plan for eligible employees.

3      6.      These retirement plans are written contracts between the University and the

4  employees that participate in the plans.

5      7.      As governmental plans, the plans are not subject to judicial review procedures

6  under ERISA.  *Navlet v. Port of Seattle*, 164 Wn.2d 818, 831 (2008).  Rather, interpretation of

7  the plan is subject to state contract law.  *Id.*

8      8.      The University of Washington has a duty to make employer contributions

9  pursuant to the UWRP.  Plan participants under thirty-five must make 5% contributions that are

10  matched by the University.  Plan participants that are thirty-five and older must make 7.5%

11  contributions that are matched by the University.

12      9.      Prior to May 28, 2020, plan participants who were fifty and older could elect to

13  increase their UWRP 7.5% contribution (matched by the University) to 10% (matched by the

14  University).  The University did not obtain a salary reduction agreement for the elective 2.5%

15  increase in UWRP contributions.

16      10.      On May 28, 2020, the University amended the UWRP such that plan participants

17  fifty and older had a mandatory 10% contribution, while participants could elect to reduce that

18  contribution to 7.5%.

19      11.      Plan participants may also participate in the UWVIP, under which employees may

20  make unmatched contributions.

21      12.      The contributions to the UWVIP are "in addition to any contributions which may

22  be made to the University of Washington Retirement Plan (UWRP)…"

23      13.      Contributions to the UWRP and the UWVIP are subject to contribution

24  limitations under the tax law.

25      14.      Plan participants are not always able to foresee when their contributions would

26  cause them to exceed a contribution limitation.  For instance, employees choose to contribute a

27

**CLASS ACTION COMPLAINT**  -  2

\Horwitz\Pldgs\Summons 09-22-22

**BENDICH, STOBAUGH & STRONG, P.C.**
126 NW CANAL STREET, SUITE 100
SEATTLE, WASHINGTON  98107
(206) 622-3536

certain percentage of their salary to the plans.  A mid-year change in compensation can cause a contribution percentage that previously would have been under the contribution limit to subsequently cause excess contributions.

15.     Employees "rely on their employers for information regarding their benefits." *Samuelson v. Comm. Coll. Dist. No. 2*, 75 Wn. App. 340, 348 (1994).

16.     The University has a fiduciary duty to plan participants as the plan administrator, as well as a contractual duty.

17.     Under the plan, the University also has a duty to "advise" plan participants about excessive contributions.

18.     Prior to 2018, the University of Washington would inform plan participants if a an individual unmatched contribution to the UWVIP would ultimately cause excess contributions for that tax year based on the current rate of the employee's matched contribution.  The University and plan participants would then reduce the unmatched contributions going forward to ensure there was no reduction in matching contributions or excess contributions.

19.     The University incorporates the tax law in its maximum contribution provision.

20.     Under tax law, for excessive contributions, the plan administrator must first "distribute unmatched elective contributions" and may only "distribute elective contributions…that are matched" and have the plan participant "forfeit related matching contributions" when "excess remains" after first distributing unmatched contributions. *Fixing Common Plan Mistakes* (available at https://www.irs.gov/retirement-plans/fixing-common-plan-mistakes-failure-to-limit-contributions-for-a-participant).

21.     Consistent with the tax code, the UWVIP allows participants that designate VIP contributions that would exceed plan contribution limitations "excess VIP contributions by notifying the Program Administrator of the amount of the excess on or before March 15 of the year following the year in which the excess contributions occurred."

22.     Thus, the University has a duty under tax law and under the plan contract to

**CLASS ACTION COMPLAINT** - 3

\Horwitz\Pldgs\Summons 09-22-22

**BENDICH, STOBAUGH & STRONG, P.C.**
126 NW CANAL STREET, SUITE 100
SEATTLE, WASHINGTON  98107
(206) 622-3536

1  advise plan participants of any excess contributions so that they may correct those contributions

2  by the April 15th deadline.

3      23.     In approximately 2018, the University changed its payroll system.

4      24.     Until approximately 2018, when the University changed its payroll system, when

5  a plan participant exceeded a contribution limitation, the University of Washington informed the

6  employee that the unmatched UWVIP contributions will reduce the amount of matching

7  contributions.

8      25.     Since approximately 2018, when the University changed its payroll system, the

9  University no longer advises plan participants of their excess contributions.

10     26.     The University does not allow plan participants to make corrections to their

11 excess contributions by designating them contributions for the following year.

12     27.     The University thus reduces the total amount of employer matching contributions

13 below the promised matching percentage.

14     28.     This reduction violates the UWRP plan promise to provide matching contribution

15 percentages.

16     29.     This reduction violates the tax law rule against cutbacks.

17     30.     The University admitted that this claw back was an "error" that occurred pursuant

18 to the new payroll system.

19     31.     The University previously corrected the claw back and restored the employer

20 matching contributions for some individuals but it no longer makes such corrections.

21     32.     The University also applies plan amendments related to the University's reduction

22 to individuals who were hired prior to the amendment of the plan to the detriment of such plan

23 participants in violation of *Bakenhus v. City of Seattle*, 48 Wn.2d 695, 698 (1956).  Under

24 *Bakenhus*, the plan rules vest at the time of hire and cannot be altered to the detriment of the

25 employee.  *Id*; *Navlet*, 164 Wn.2d at 838.

26     33.     Plaintiff Marshall Horwitz has had his employer matching contributions reduced

27

**CLASS ACTION COMPLAINT**  -  4

BENDICH, STOBAUGH & STRONG, P.C.
126 NW CANAL STREET, SUITE 100
SEATTLE, WASHINGTON  98107
(206) 622-3536

\Horwitz\Pldgs\Summons 09-22-22

1    by the University.

2         34.    Plaintiff David Layton has had his employer matching contributions reduced by

3    the University.

4         35.    Plaintiff Richard Johnson has had his employer matching contributions reduced

5    by the University.

6                    **FACTS RELATED TO PLAINTIFF MARSHALL HORWITZ**

7         36.    Plaintiff Marshall Horwitz, MD, PhD, is a professor in the University of

8    Washington School of Medicine's Department of Laboratory Medicine & Pathology and

9    Associate Dean for Physician-Scientist Education.

10        37.    Dr. Horwitz became a faculty member at the University of Washington eligible

11   for participation in the UWRP in 1995.

12        38.    Dr. Horwitz began participating in the UWVIP in 2006.

13        39.    When he first enrolled in the UWVIP, Dr. Horwitz set his contributions at $2,333

14   per pay period.

15        40.    Dr. Horwitz set the contribution amount high to maximize his investment returns.

16        41.    This is a normal investment strategy because contributions made earlier in the

17   year have a longer compounding period.

18        42.    For over a decade, when the sum of the UWVIP contributions reached the annual

19   limit for the calendar year, the University of Washington automatically ceased making further

20   contributions to Dr. Horwitz's UWVIP for the remaining pay periods, so as to avoid needing to

21   make a compensatory reduction in Dr. Horwitz's matching contributions under the UWRP.

22        43.    For instance, on October 21, 2014, Kurt Peters, Assistant Director of the

23   University of Washington Human Resources Benefits Office, sent Dr. Horwitz an email that

24   contained the following text:

25        We keep track of contributions going into the UWRP and VIP account to try and
          prevent employees from going over the IRS limit.  Based on your contributions
26        year to date, you would have gone over the limit by December 31, so we have
          reduced the payroll system cap on your VIP contributions for the remainder of the
27

**CLASS ACTION COMPLAINT** - 5

**BENDICH, STOBAUGH & STRONG, P.C.**
126 NW CANAL STREET, SUITE 100
SEATTLE, WASHINGTON  98107
(206) 622-3536

\Horwitz\Pldgs\Summons 09-22-22

year to allow you to get the most contributions into the UWRP plan as possible (and thus the UW match).

44.     Dr. Horwitz relied on the University's advice, like the above email, on when to cease making non-matching UWVIP contributions to ensure he received the entire matching contributions to which he was entitled under the UWRP.

45.     In some years, if the University did not correct the non-matching contribution amount in time, the University would correct the excess contribution to the UWVIP plan by subtracting the overage from subsequent pay periods, to ensure that Dr. Horwitz received the entire UWRP matching contributions to which he was entitled.

46.     Beginning in 2018 and without notifying Dr. Horwitz, the University ceased adjusting Dr. Horwitz's non-matching UWVIP contributions at the point in the year when they needed to stop in order to ensure that Dr. Horwitz received all the matching contributions to which he was entitled under the UWRP.

47.     Dr. Horwitz monitored his elective contribution amounts but, due to the changing contribution limitations (which resulted from changes to salary and changes to the IRS limitation caps), he could not tell exactly when his UWVIP elective contributions should cease in order to ensure he received both the maximum compounding period for his elective contributions as well as the total promised matching contributions under the UWRP.  From his perspective, he simply saw the University ceasing to make Dr Horwitz's UWVIP elective deferrals on a certain date each year.  He could not tell that the University had stopped their procedure of shutting off UWVIP elective deferrals to ensure he received all the promised UWRP matching contributions to instead allowing Dr. Horwitz's elective deferrals to displace the employer matching contributions, only ceasing the UWVIP elective contributions when the total contribution limit was reached.

48.     Since 2018, Dr. Horwitz has lost more than $14,000 in employer matching contributions.

49.     Dr. Horwitz discovered this problem in January of 2021.

**CLASS ACTION COMPLAINT**  -  6

\Horwitz\Pldgs\Summons 09-22-22

**BENDICH, STOBAUGH & STRONG, P.C.**
126 NW CANAL STREET, SUITE 100
SEATTLE, WASHINGTON  98107
(206) 622-3536

50.     On February 2, 2021, Dr. Horwitz had a conference call with Ginny Montgomery and Barry Nemeth Jr. of the University of Washington Human Resources Office.

51.     Ms. Montgomery and Mr. Nemeth Jr. described the University's new failure to advise Dr. Horwitz about the contribution limitations as a "failure to program the payroll override limit" in the new payroll system.

52.     When asked why plan participants were never informed of this problem in the new payroll system, Mr. Nemeth stated "I have no explanation."

53.     Later, on August 27, 2021, the University confirmed that plan participants would be informed of this plan error.  In reference to the "error" identified above, Mindy Kornberg, UW Human Resources Vice President, confirmed in an email that "UW will inform participants of [the] identified errors."  The University never did so.

### FACTS RELATED TO PLAINTIFF DAVID LAYTON

54.     Plaintiff David F. Layton, PhD, MA, is professor at the University of Washington's Evans School of Public Policy and Governance.

55.     Dr. Layton began teaching at the Evans School in 2001 and became eligible for participation in the UWRP at that time.

56.     Dr. Layton began participating in the UWVIP in 2003

57.     When he first enrolled in the UWVIP, he made the maximum amount of elective contributions.

58.     Dr. Layton turned 50 in 2017 and elected to make the additional 2.5% contribution that would be matched pursuant to the UWRP.  Though his total contribution limits increased due to his age, he did not also increase his contributions to the UWVIP at that time.

59.     In 2019, Dr. Layton wished to frontload his UWVIP contributions in order to reach his annual limit prior to going on summer pay hiatus.

60.     The University unilaterally ceased Dr. Layton's UWVIP contributions for the second pay period in March 2019.

**CLASS ACTION COMPLAINT** - 7

\Horwitz\Pldgs\Summons 09-22-22

**BENDICH, STOBAUGH & STRONG, P.C.**
126 NW CANAL STREET, SUITE 100
SEATTLE, WASHINGTON  98107
(206) 622-3536

1          61.      The University then made a $86.95 UWVIP contribution for the first pay period

2     in April 2018.

3          62.      The University then again ceased making UWVIP contributions for Dr. Layton.

4          63.      Dr. Layton noticed this in Fall 2019.

5          64.      He then inquired with the University's Human Resources department about what

6     had occurred.

7          65.      Ginny Montgomery, Director of Benefit Operations, stated the following in an

8     email:

> I realized that I did not send a final follow-up email to you regarding your UWRP issue from 2019.  I went back and researched what happened and reviewed to see if this was an issue for anyone else.  What I found what that we had 5 individuals similar to you who had a very large amount of VIP deductions early in 2019.  Due to the combined deferral limit between the Optional 2.5% of UWRP and VIP, an employee who contributes "too much" VIP will lose out on the balance of their 2.5% later in the year.  There was an attempt to limit the VIP for these employees so that this didn't happen by applying an override on the accounting codes.  While this works, all of the codes for the combined limit must be adjusted or the VIP deduction will stop and the 2.5% will also stop.
>
> Of the six employee impacted (you + the other 5), you were the only one we didn't catch until the end of the year.  3 employees retired before they were impacted and the other 2 had job changes that impacted their benefits and removed the codes.
>
> I want to assure you again that we have instituted new audit processes to ensure all of the codes stay in sync so that employees can maximize their retirement and we can manage any impacts of job changes.
>
> All of your adjustments were completed in late January and I will be checking on your payroll deductions periodically during 2020 to ensure there are no issues for you to be concerned about.
>
> I will be closing out the ticket we have for you regarding this inquiry.  Please feel free to email me directly if you have any additional questions."

          66.      Ginny Montgomery sent Dr. Layton an email stating the following:

> We will be requesting an earnings calculation…to ensure you are made whole…based on the amount that should have been sent to them earlier in the year.

**CLASS ACTION COMPLAINT** - 8

\Horwitz\Pldgs\Summons 09-22-22

**BENDICH, STOBAUGH & STRONG, P.C.**
126 NW CANAL STREET, SUITE 100
SEATTLE, WASHINGTON  98107
(206) 622-3536

The error occurred when limit overrides were loaded back in late March and early April. The process mapping has been updated for 2020 so we do not anticipate future errors like this one again.

67. And in another email:

I want to assure you again that we have instituted new audit processes to ensure…employees can maximize their retirement and we can manage any impacts of job changes.

All of your adjustments were completed in late January and I will be checking on your payroll deductions periodically during 2020 to ensure there are no issues for you to be concerned about.

68.    Based on these discussions with Ms. Montgomery, Dr. Layton did not change his elective UWVIP contribution amounts.

69.    In April 2020, Dr. Layton noticed that $1400 had been removed from his UWVIP account. He contacted Ms. Montgomery but received no response.

70.    That summer, Dr. Layton received summer salary in compensation for administrative responsibilities as Associate Dean.

71.    He contacted the human resources department believing that they may not have adjusted his UWVIP contributions in light of his summer pay.

72.    Ms. Montgomery sent him a message that stated:

We have reviewed your current information and due to your additional time worked over the summer there is another VIP adjustment needed to ensure you receive the full 2.5% of UWRP.

We are refunding an additional $630.08 of VIP on the 11/25 paycheck.

73. Despite proactively contacting the University multiple times to try to ensure he both received the maximum amount of matching contributions under the UWRP and also contributed the maximum allowable elective contributions under the UWVIP, he did reach his contribution limits. He received $220.38 less than his annual limit in UWRP matching contributions and contributed $220.48 less than his annual limit in UWVIP elective contributions.

74.    In 2021, the University shorted Dr. Layton $692.31 in UWRP matching contributions.

**CLASS ACTION COMPLAINT** - 9

**BENDICH, STOBAUGH & STRONG, P.C.**
126 NW CANAL STREET, SUITE 100
SEATTLE, WASHINGTON 98107
(206) 622-3536

75.     In 2021, Dr. Layton started the year with $3900 VIP contributions with the belief that the University was monitoring his contributions.

76.     After 3 pay periods he decided to direct his contributions to TIAA instead of Fidelity. Given that he was making adjustments and so he had to log onto the Fidelity site he decided to reduce his contributions to $887 per pay period.

77.     He received summer salary due to a research grant that resulted in him making additional UWVIP contributions.

78.     On September 24, 2021, the University unilaterally and without warnings reduced his VIP contribution from $887 to $574.45 and then ceased making it altogether with the next pay period.

79.     This also resulted in a loss of UWRP matching contributions.

80.     Though he had previously had multiple emails and phone calls assuring him that the University would ensure that he could maximize his matching contributions, the University never informed him that it had changed its policy.

## FACTS RELATED TO PLAINTIFF RICHARD JOHNSON

81.     Richard Johnson started working for the University of Washington as a staff scientist in 2011.

82.     Dr. Johnson began participating in the UWVIP in 2011.

83.     In early 2021, he noticed that he had not received the total amount of UWRP matching contributions to which he was entitled.

84.     He sent the following to the University:

For 2020, it appears you prematurely terminated my UWRP because of contributions from my VIP component. This results in premature termination of my matched contributions to the primary UWRP part of the plan as I lose the 10% of my pre-tax wages. My UWRP match was $10,874, but should have been around $11,833. Please respond on how you will correct this.

85. The University responded:

**CLASS ACTION COMPLAINT** - 10

\Horwitz\Pldgs\Summons 09-22-22

**BENDICH, STOBAUGH & STRONG, P.C.**
126 NW CANAL STREET, SUITE 100
SEATTLE, WASHINGTON  98107
(206) 622-3536

1
2
3
4

> We have confirmed that your 2.5% optional UWRP contributions stopped after the 9/10/20 pay check due to reaching the IRS Elective Deferral Limit, which was $26,000 for participants age 50 and older in 2020. This limit includes all VIP contributions and the 2.5% Optional UWRP contributions. Your VIP deferral election is set at $1,500 per pay check and you contributed $24,000 toward your VIP and $2,000 toward your 2.5% UWRP optional contributions when you reached the limit. We cannot correct your 2020 contributions.

5
6
7
8
9

> Workday is programmed to take deductions for the benefits for which you are enrolled. Part of this programming is stopping retirement contributions when they reach the IRS limit for the year. We are operating on the assumption that you have authorized a retirement deferral election and we are obligated to take the election you made. We are willing to work with you to optimize your contributions, but ultimately you, as the employee, are responsible for your elections and should monitor your contributions. If you would like to discuss your current year elections and how to optimize your contributions, please let me know.

10
11
12
13

86.    As a result of learning that the University was not informing him of when UWVIP contributions would conflict with the 2.5% UWRP matching contribution, Dr. Johnson checked his previous years and learned that he had also not received the maximum amount of matching contributions in 2017 ($16.29 short), 2018 ($120.73 short), or 2019 ($17.02 short).

14

## CLASS ACTION ALLEGATIONS

15
16

87.    Plaintiffs Marshall Horwitz, David Layton, and Richard Johnson represent a class of similarly situated individuals, participants of the UWRP.

17
18

88.    There are over 7,000 participants in the UWRP.

19

89.    The University's reductions could affect any plan participant because any plan participant could exceed a contribution limitation.

20
21
22
23
24
25
26
27

90.    There are plan participants, who like plaintiff Marshall Horwitz, David Layton, and Richard Johnson, have had their employer contributions clawed back by the University. These class members are entitled to a class-wide determination: (1) that the University may not claw back guaranteed employer contributions; (2) that the University must advise plan participants of any excess employee contributions and provide plan participants the opportunity to correct the excess contributions up to April 15th of the following year; and (3) that they are entitled to monetary relief that is incidental to the class-wide determination of their rights under

**CLASS ACTION COMPLAINT  -  11**

\Horwitz\Pldgs\Summons 09-22-22

**BENDICH, STOBAUGH & STRONG, P.C.**
126 NW CANAL STREET, SUITE 100
SEATTLE, WASHINGTON  98107
(206) 622-3536

1    those plans, *i.e.*, corrections to the plan participants' accounts.

2         91.     The class is so numerous that joinder of all members is impractical.  Joinder of

3    members is also impracticable because the monetary claims are small, given the burden of

4    litigation.

5         92.     There are common questions of law and fact that pertain to the class, *e.g.*, may the

6    University claw back guaranteed employer contributions?

7         93.     The named plaintiffs' claims are typical of the class in that they arise from the

8    defendant's interpretation of the plan in which all class members participate.

9         94.     Plaintiff Horwitz, Plaintiff Layton, and Plaintiff Johnson will adequately represent

10   and protect the interests of the class because they have retained competent and experienced

11   counsel, this lawsuit is not collusive, and their interest in the litigation is not antagonistic to class

12   members.  Plaintiffs Horwitz, Layton, and Johnson have the same interest as the class in

13   receiving retirement benefits under the plan.

14        95.     Because the plan must be applied in the same way to all plan participants, there is

15   a likelihood, in the absence of certification, that the decision will impact others who are not

16   parties.  Here, there is a potential that, if this case is determined only for Dr. Horwitz, Dr. Layton

17   and Dr. Johnson individually, the Court's decision will still affect the rights of others.  Class

18   certification is thus appropriate under CR 23(b)(1)(B).

19        96.     Additionally, because the defendant has acted on grounds applicable to the class

20   as a whole, making a class-wide determination about defendant's interpretation and the meaning

21   of the relevant plans appropriate with respect to the class as a whole, the class should be certified

22   under CR 23(b)(2).  Monetary relief for class members who were denied retirement

23   compensation is appropriate under CR 23(b)(2) because obtaining monetary relief for clawed

24   back guaranteed employer contributions flows directly from the class-wide determination sought

25   under CR 23(b)(2).

26

27

**CLASS ACTION COMPLAINT** - 12

**BENDICH, STOBAUGH & STRONG, P.C.**
126 NW CANAL STREET, SUITE 100
SEATTLE, WASHINGTON  98107
(206) 622-3536

\Horwitz\Pldgs\Summons 09-22-22

1

## CLAIM FOR BREACH OF CONTRACT

2

97.    The retirement plans are written contracts with all plan participants, including

3

plaintiffs.  The defendants breached the contracts by clawing back guaranteed employer

4

contributions in violation of the contract terms and tax law.  Because the University

5

acknowledged that the claw back is an "error," the defendant's conduct was willful.

6

## RELIEF

7

The plaintiffs on behalf of themselves and a class of similarly situated individuals seek the

8

following relief:

9

A.  Certification of the class under CR 23(a) and 23(b)(1) and (2);

10

B.  Declaratory relief, *i.e.*, a ruling that the University may not claw back the promised

11

employer contributions;

12

C.  Injunctive relief, *i.e.*, an injunction requiring the University to apply the plan correctly

13

in the future;

14

D.  Incidental monetary relief, *i.e.*, payment or restitution for the retirement compensation

15

owed which was denied to the named plaintiffs and others similarly situated;

16

E.  Exemplary damages pursuant to RCW 49.52.050 and -.070 for willful withholding of

17

wages;

18

F.  Attorney fees pursuant to the common fund doctrine, RCW 49.48.030, and RCW

19

49.52.070;

20

G.  Omitted employer contributions;

21

H.  Lost investment returns on retirement contributions pursuant to IRS Employee Plans

22

Compliance Resolution System in Revenue Procedure 2019-19 to which government

23

plans are subject (see IRS FAQ Regarding Government Plans)[1]; and

24

I.  Interest on the monetary relief.

25

26

_____

[1] https://www.irs.gov/retirement-plans/retirement-plans-faqs-regarding-governmental-plans-and-epcrs

27

**CLASS ACTION COMPLAINT** - 13

**BENDICH, STOBAUGH & STRONG, P.C.**
126 NW CANAL STREET, SUITE 100
SEATTLE, WASHINGTON  98107
(206) 622-3536

\Horwitz\Pldgs\Summons 09-22-22

1    DATED this 22nd day of September, 2022.

2                                              Respectfully submitted,

3                                              BENDICH, STOBAUGH & STRONG, P.C.

4

5                                               /s/ Alexander F. Strong
                                               Alexander F. Strong, WSBA #49839
6                                              David F. Stobaugh, WSBA #6376
                                               Stephen K. Strong, WSBA #6299
7                                              126 NW Canal Street, Suite 100
                                               Seattle, Washington  98107
8                                              Phone:  (206) 622-3536
                                               *Attorneys for Plaintiffs*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**CLASS ACTION COMPLAINT**  -  14

\Horwitz\Pldgs\Summons 09-22-22

**BENDICH, STOBAUGH & STRONG, P.C.**
126 NW CANAL STREET, SUITE 100
SEATTLE, WASHINGTON  98107
(206) 622-3536