# EXHIBIT B

*R&G Draft October 1, 2021*

F-3.1/211-21
11/10/21

## UNIVERSITY OF WASHINGTON
## VOLUNTARY INVESTMENT PROGRAM (VIP)
### (As Amended and Restated Effective January 1, 2019)

### First Amendment

WHEREAS, The Board of Regents of the  University of Washington (the "Board") established the University of Washington Tax-Deferred Annuity Program, and named the program the Voluntary Investment Program, as amended and restated effective January 1, 2019 and as further amended from time to time (the "Plan")

WHEREAS, Section 9.1 of the Plan reserves to the University of Washington ("UW") the right to amend the Plan at any time;

NOW, THEREFORE, Section 6.3 of the Plan is hereby amended for each applicable Fund Sponsor as follows:

1. Effective <u>January 1, 2019</u> with respect to hardship distributions from Accumulation Accounts held at Fidelity as Fund Sponsor, the second paragraph of Section 6.3 is amended by deleting item (f) and replacing it in its entirety as follows:

   "… (f) expenses to repair damage to the Participant's principal residence that would qualify for the casualty deduction under Code section 165 (determined without regard to whether the loss exceeds 10% of adjusted gross income and determined without regard to Code section 165(h)(5))."

2. Effective <u>July 1, 2019</u> with respect to hardship distributions from Accumulation Accounts held at Fidelity as Fund Sponsor, Section 6.3 is deleted in its entirety and replaced with the following:

   "**Hardship Distributions.**  Hardship distributions under Section 6.1 shall be approved only if the Participant has an immediate and heavy financial need and the distribution is necessary to satisfy the need, as determined in accordance with procedures established by the Program Administrator. In such cases, there shall be paid to such Participant out of his or her Accumulation Account only such portion of the amount requested as is necessary to prevent or alleviate the hardship. The Program Administrator's determination shall be final and binding.  No amount attributable to income credited after December 31, 1988, on VIP Contributions shall be available for distribution on account of hardship.

   The following are deemed to be immediate and heavy financial needs of the Participant: (a) medical expenses described in section 213(d) of the Code incurred by the Participant or the Participant's spouse, dependents, or primary beneficiary as defined in Q&A 5 of IRS Notice 2007-7; (b) purchase (excluding mortgage payments) of a principal residence for the Participant; (c) payment of tuition, room and board for the next 12 months of post-

1

F-3.1/211-21
11/10/21

secondary education for the Participant or the Participant's spouse, children, dependents, or primary beneficiary or; (d) the payment of amounts necessary to prevent the eviction of the Participant from his or her principal residence or the foreclosure on the mortgage of his or her principal residence; (e) burial or funeral expenses for the Participant's deceased parent, spouse, children, dependents, or primary beneficiary; or (f) expenses to repair damage to the Participant's principal residence that would qualify for the casualty deduction under Code section 165 (determined without regard to whether the loss exceeds 10% of adjusted gross income and determined without regard to Code section 165(h)(5)).

Hardship distributions will be deemed to be necessary to satisfy an immediate and heavy financial need of the Participant if the distribution does not exceed the amount of the applicable need under the second paragraph of Section 6.3 increased by taxes resulting from the distribution and the Participant has obtained all distributions, other than hardship distributions, and, prior to July 1, 2019, all nontaxable loans, in each case currently available under the Program and any other plan maintained by UW or any Related Employer.

Prior to July 1, 2019 a Participant who received a hardship distribution under this Section 6.3 was ineligible to make VIP Contributions during the 6-month period beginning on the date of such hardship distribution.  Any Participant who is subject to such 6-month suspension as of July 1, 2019 will no longer be subject to such 6-month suspension."

3.  Effective <u>December 10, 2019</u> with respect to hardship distributions from Accumulation Accounts held at TIAA as Fund Sponsor, Section 6.3 is deleted in its entirety and replaced with the following:

"**Hardship Distributions.**  Hardship distributions under Section 6.1 shall be approved only if the Participant has an immediate and heavy financial need and the distribution is necessary to satisfy the need, as determined in accordance with procedures established by the Program Administrator. In such cases, there shall be paid to such Participant out of his or her Accumulation Account only such portion of the amount requested as is necessary to prevent or alleviate the hardship. The Program Administrator's determination shall be final and binding.  No amount attributable to income credited after December 31, 1988, on VIP Contributions shall be available for distribution on account of hardship.

The following are deemed to be immediate and heavy financial needs of the Participant: (a) medical expenses described in section 213(d) of the Code incurred by the Participant or the Participant's spouse, dependents, or primary beneficiary as defined in Q&A 5 of IRS Notice 2007-7; (b) purchase (excluding mortgage payments) of a principal residence for the Participant; (c) payment of tuition, room and board for the next 12 months of post-secondary education for the Participant or the Participant's spouse, children, dependents, or primary beneficiary or; (d) the payment of amounts necessary to prevent the eviction of the Participant from his or her principal residence or the foreclosure on the mortgage of his or her principal residence; (e) burial or funeral expenses for the Participant's deceased parent, spouse, children, dependents, or primary beneficiary; or (f) expenses to

F-3.1/211-21
11/10/21

repair damage to the Participant's principal residence that would qualify for the casualty deduction under Code section 165 (determined without regard to whether the loss exceeds 10% of adjusted gross income).

Hardship distributions will be deemed to be necessary to satisfy an immediate and heavy financial need of the Participant if the distribution does not exceed the amount of the applicable need under the second paragraph of Section 6.3 increased by taxes resulting from the distribution and the Participant has obtained all distributions, other than hardship distributions, and, prior to December 10, 2019, respectively, all nontaxable loans, in each case currently available under the Program and any other plan maintained by UW or any Related Employer.

Prior to December 10, 2019, respectively, a Participant who received a hardship distribution under this Section 6.3 was ineligible to make VIP Contributions during the 6-month period beginning on the date of such hardship distribution.  Any Participant who is subject to such 6-month suspension as of December 10, 2019, respectively, will no longer be subject to such 6-month suspension."

4. Effective <u>January 1, 2020</u> with respect to with respect to hardship distributions from Accumulation Accounts held at Fidelity or TIAA as Fund Sponsor, Section 6.3 is deleted in its entirety and replaced with the following:

"**Hardship Distributions.**  Hardship distributions under Section 6.1 shall be approved only if the Participant has an immediate and heavy financial need and the distribution is necessary to satisfy the need, as determined in accordance with procedures established by the Program Administrator. The Participant must provide to the Program Administrator a representation in writing, or in such other form as may be permitted under applicable Treasury regulations, that the Participant has insufficient cash or other liquid assets reasonably available to satisfy the financial need and the Program Administrator does not have actual knowledge that is contrary to this representation.  In such cases, there shall be paid to such Participant out of his or her Accumulation Account only such portion of the amount requested as is necessary to prevent or alleviate the hardship. The Program Administrator's determination shall be final and binding.  No amount attributable to income credited after December 31, 1988, on VIP Contributions shall be available for distribution on account of hardship.

The following are deemed to be immediate and heavy financial needs of the Participant: (a) medical expenses described in section 213(d) of the Code incurred by the Participant or the Participant's spouse, dependents, or primary beneficiary as defined in Q&A 5 of IRS Notice 2007-7; (b) purchase (excluding mortgage payments) of a principal residence for the Participant; (c) payment of tuition, room and board for the next 12 months of post-secondary education for the Participant or the Participant's spouse, children, dependents, or primary beneficiary or; (d) the payment of amounts necessary to prevent the eviction of the Participant from his or her principal residence or the foreclosure on the mortgage of his or her principal residence; (e) burial or funeral expenses for the Participant's deceased parent, spouse, children, dependents, or primary beneficiary; (f) expenses to repair damage to the Participant's principal residence that would qualify for the casualty

F-3.1/211-21
11/10/21

deduction under Code section 165 (determined without regard to whether the loss exceeds 10% of adjusted gross income and determined without regard to Code section 165(h)(5)); or (g) with respect to hardship distributions from Accumulation Accounts held at TIAA as Fund Sponsor only, expenses and losses (including loss of income) incurred by the Participant on account of a disaster declared by the Federal Emergency Management Agency ("FEMA") under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, provided that the Participant's principal residence or principal place of employment at the time of the disaster was located in an area designated by FEMA for individual assistance with respect to the disaster.

Hardship distributions will be deemed to be necessary to satisfy an immediate and heavy financial need of the Participant if the distribution does not exceed the amount of the applicable need under the second paragraph of Section 6.3 increased by taxes resulting from the distribution and the Participant has obtained all distributions currently available under the Program and any other plan maintained by UW or any Related Employer, other than hardship distributions and loans.

Prior to July 1, 2019 with respect to Accumulation Accounts held at Fidelity and December 10, 2019 with respect to Accumulation Accounts held at TIAA, a Participant who received a hardship distribution under this Section 6.3 was ineligible to make VIP Contributions during the 6-month period beginning on the date of such hardship distribution.  Any Participant who is subject to such 6-month suspension as of July 1, 2019 and December 10, 2019, respectively, will no longer be subject to such 6-month suspension."

5.  Effective <u>October 1, 2021</u>, the second paragraph of Section 6.3 is amended by deleting item (g) in its entirety and replacing it with the following:

    "… (g) expenses and losses (including loss of income) incurred by the Participant on account of a disaster declared by the Federal Emergency Management Agency ("FEMA") under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, provided that the Participant's principal residence or principal place of employment at the time of the disaster was located in an area designated by FEMA for individual assistance with respect to the disaster."

6.  Except to the extent specifically amended hereby, the provisions of the Plan shall remain unmodified and in full force and effect."

80591593_5

F-3.1/211-21
11/10/21

IN WITNESS WHEREOF, the University of Washington has caused this instrument to be signed by its duly authorized representative this _____ day of December, 2021.

By:_____

Title:_____

Date:_____

-5-

# University of Washington
# Voluntary Investment Program (VIP)
Amended and Restated, Effective January 1, 2019

# Voluntary Investment Program (VIP) Plan Document

## Table of Contents

1.      Establishment of Voluntary Investment Program ........................................................... 1

    1.1.      Establishment of Program ...................................................................................... 1

2.      Definitions ........................................................................................................................ 1

    2.1.      Accumulation Account ........................................................................................... 1

    2.2.      Annuity Contract .................................................................................................... 1

    2.3.      Beneficiary .............................................................................................................. 1

    2.4.      Board ....................................................................................................................... 1

    2.5.      Code ........................................................................................................................ 1

    2.6.      Contribution Agreement ......................................................................................... 1

    2.7.      Custodial Account .................................................................................................. 1

    2.8.      Eligible Employee ................................................................................................... 1

    2.9.      Fund Sponsor .......................................................................................................... 2

    2.10.    Funding Vehicles .................................................................................................... 2

    2.11.    Includible Compensation ........................................................................................ 2

    2.12.    Master Administrator .............................................................................................. 2

    2.13.    Participant ............................................................................................................... 2

    2.14.    Pre-Tax Contribution .............................................................................................. 2

    2.15.    Pre-Tax Sub-Account ............................................................................................. 2

    2.16.    Program .................................................................................................................. 2

    2.17.    Program Administrator ........................................................................................... 2

    2.18.    Program Year .......................................................................................................... 2

    2.19.    Related Employer .................................................................................................... 2

    2.20.    Roth Contribution ................................................................................................... 2

    2.21.    Roth Sub-Account .................................................................................................. 3

|       |       |                                                           |     |
|-------|-------|-----------------------------------------------------------|-----|
|       | 2.22. | VIP Contributions                                         | 3   |
|       | 2.23. | UW                                                        | 3   |
| 3.    |       | Eligibility and Participation                             | 3   |
|       | 3.1.  | Eligibility and Participation                             | 3   |
|       | 3.2.  | Termination of Participation                              | 3   |
| 4.    |       | VIP Contributions                                         | 3   |
|       | 4.1.  | VIP Contributions                                         | 3   |
|       | 4.2.  | Contribution Minimum                                      | 4   |
|       | 4.3.  | Leave of Absence                                          | 4   |
|       | 4.4.  | Limitations on VIP Contributions                          | 4   |
|       | 4.5.  | Return of Excess VIP Contributions                        | 4   |
|       | 4.6.  | Rollover Contributions and Transfers                      | 4   |
|       | 4.7.  | Vesting of Contributions                                  | 6   |
|       | 4.8.  | Quarterly Statement                                       | 6   |
|       | 4.9.  | No Reversion                                              | 6   |
|       | 4.10. | Protection of Persons Who Serve in a Uniformed Service    | 6   |
| 5.    |       | Fund Sponsors/Funding Vehicles                            | 7   |
|       | 5.1.  | Fund Sponsors/Funding Vehicles                            | 7   |
|       | 5.2.  | Allocation of Contributions                               | 7   |
|       | 5.3.  | Fund Transfers                                            | 7   |
|       | 5.4.  | Fund Review Committee                                     | 7   |
|       | 5.5.  | Third Party Trading                                       | 9   |
| 6.    |       | Benefits                                                  | 9   |
|       | 6.1.  | Benefits in General                                       | 9   |
|       | 6.2.  | Death Benefits                                            | 9   |
|       | 6.3.  | Hardship Distributions                                    | 9   |
|       | 6.4.  | Minimum Distribution Requirements                         | 10  |
|       | 6.5.  | Application for Benefits; Spousal Consent                 | 11  |
|       | 6.6.  | Loans                                                     | 11  |
|       | 6.7.  | Direct Rollover of Eligible Rollover Distributions        | 12  |

7.      General Provisions and Limitations Regarding Benefits ........................................ 13

    7.1.   Non-Alienation of Retirement Rights or Benefits .......................................... 13

8.      Administration ........................................................................................................ 14

    8.1.   Program Administrator ................................................................................... 14

    8.2.   Authority of the Program Administrator ........................................................ 14

    8.3.   Delegation of Authority .................................................................................. 14

    8.4.   Suspense Accounts ......................................................................................... 14

9.      Amendment and Termination .................................................................................. 15

    9.1.   Amendment and Termination ......................................................................... 15

    9.2.   Distribution Upon Termination of the Program ............................................. 15

    9.3.   Limitation ....................................................................................................... 15

10.     Miscellaneous ......................................................................................................... 15

    10.1.  Program Does Not Affect Employment ......................................................... 15

    10.2.  Claims of Other Persons ................................................................................ 15

    10.3.  Contracts and Certificates .............................................................................. 15

    10.4.  Requests for Information ................................................................................ 15

    10.5.  Mistaken Contributions .................................................................................. 16

    10.6.  Governing Law ............................................................................................... 16

69837945_3

1.      **Establishment of Voluntary Investment Program**

1.1.    **Establishment of Program**.  The Board of Regents of the University of Washington established a University of Washington Tax-Deferred Annuity Program as of January 1, 1972, as allowed under State of Washington RCW 28.B.10.480. As of July 1994, the program is named the Voluntary Investment Program.

This plan document sets forth the provisions of this Program, as in effect on January 1, 2019. Contributions under this Program are made under section 403(b) of the Internal Revenue Code and are invested, at the direction of the Participant, in one or more of the Funding Vehicles available under the Program.

2.      **Definitions**

The words and phrases defined in this Article have the following meanings throughout this plan document:

2.1.    **Accumulation Account** means the account established for each Participant with each Fund Sponsor, consisting of a Pre-Tax Sub-Account to which Pre-Tax Contributions shall be credited and a Roth Sub-Account to which Roth Contributions shall be credited.  The current value of a Participant's Accumulation Account with a Fund Sponsor includes all VIP Contributions to the Fund Sponsor, less expense charges, transfers, and benefit distributions, and reflecting credited investment experience.

2.2.    **Annuity Contract** means a non-transferable contract described in section 403(b)(1) of the Code, that is issued by an insurance company qualified to issue annuities in the State of Washington and that includes payment in the form of an annuity.

2.3.    **Beneficiary** means (a) with the written consent of the Participant's spouse, if any, such person or persons who shall have been designated by the Participant in writing duly executed and filed with the Fund Sponsor(s) or (b) if no such person survives the Participant, the surviving spouse of the Participant.  A new designation may be made at any time before the Participant or Beneficiary has started to receive annuity payments under the Program; any such new designation shall be subject to the conditions of this Section 2.3.

2.4.    **Board** means the Board of Regents of the University of Washington.

2.5.    **Code** means the Internal Revenue Code of 1986, as amended.

2.6.    **Contribution Agreement** means an agreement described in Section 3.1.

2.7.    **Custodial Account** means the group or individual custodial account or accounts, described in section 403(b)(7) of the Code, established for a Participant to hold assets of the Program.

1

2.8.    **Eligible Employee** means any employee of the University of Washington, except nonresident aliens who receive no U.S.-source earned income.

2.9.    **Fund Sponsor** means an insurance, variable annuity, or investment company that provides Funding Vehicles to Participants under the Program.

2.10.    **Funding Vehicles** means the Annuity Contracts and Custodial Accounts available for the purpose of investing contributions under this Program and specifically approved by UW under Section 5.1.

2.11.    **Includible Compensation** means an individual's compensation received from UW that is includible in gross income for federal tax purposes (computed without regard to section 911 of the Code) for the most recent period that is a year of service, as determined under section 403(b)(3) of the Code and the Treasury regulations thereunder, and increased (subject to the limits of section 401(a)(17) of the Code) by any compensation reduction election under section 125, 132(f), 401(k), 403(b), or 457(b) of the Code.  Effective January 1, 2009, Includible Compensation shall include any differential wage payment (as defined in section 414(u)(12)(D) of the Code) paid to an individual by UW to the extent required under section 414(u)(12) of the Code (and, to the extent required by section 414(u)(12)(A)(i) of the Code, such an individual shall be treated as an Eligible Employee).  The amount of Includible Compensation is determined without regard to any community property laws.

2.12.    **Master Administrator** means Fidelity Management Trust Company, which has been appointed to be the master administrator of the VIP.

2.13.    **Participant** means any employee of UW who participates in the Program in accordance with Section 3.1.

2.14.    **Pre-Tax Contribution** means the dollar amount of a Participant's pre-tax contribution to the Program pursuant to a Contribution Agreement.

2.15.    **Pre-Tax Sub-Account** means the sub-account of an Accumulation Account established for each Participant with each Fund Sponsor to which Pre-Tax Contributions have been made by the Participant. The current value of a Participant's Sub-Account with a Fund Sponsor includes all Pre-Tax Contributions to the Fund Sponsor, less expense charges, transfers, and benefit distributions, and reflecting credited investment experience.

2.16.    **Program** means the University of Washington Voluntary Investment Program as set forth in this document.

2.17.    **Program Administrator** is defined in Section 8.1.

2.18.    **Program Year** means January 1 through December 31.

2.19.    **Related Employer** means UW and any other entity which is under common control with UW under section 414(b) or (c) of the Code.

2.20. **Roth Contribution** means the dollar amount of a Participant's after-tax Roth 403(b) contribution to the Program pursuant to a Contribution Agreement.

2.21. **Roth Sub-Account** means the sub-account of an Accumulation Account established for each Participant with each Fund Sponsor to which Roth Contributions have been made by the Participant. The current value of a Participant's Roth Sub-Account with a Fund Sponsor includes all Roth Contributions to the Fund Sponsor, less expense charges, transfers, and benefit distributions, and reflecting credited investment experience.

2.22. **VIP Contributions** means Pre-Tax Contributions and Roth Contributions made by the Participant as described in Section 4.

2.23. **UW** means University of Washington.

3. **Eligibility and Participation**

3.1. **Eligibility and Participation**. All Eligible Employees may begin participation immediately upon employment as an Eligible Employee.

The Program Administrator will prescribe the method and forms required for participation including, without limitation, the necessary enrollment form(s) for the Fund Sponsor(s) and for the Funding Vehicle(s) selected, as well as a Contribution Agreement.

A Contribution Agreement is a written agreement between the employee and UW under which the employee's salary is reduced by an amount equal to the contributions that the employee wishes to have made to the Program. A Participant may elect to make Roth Contributions to the Program in lieu of all or a portion of the Pre-Tax Contributions the Participant is otherwise eligible to make under the Program. Such an election shall irrevocably designate the Roth Contributions as such at the time the election is made. The amount of any Roth Contribution shall be treated as includable in the Participant's income at the time the Participant would have received that amount in cash if the Participant had not made an election to make the Roth Contribution to the Program. A Contribution Agreement must specify the amount of VIP Contributions which are Pre-Tax Contributions and the amount of VIP Contributions which are Roth Contributions. A Contribution Agreement shall be subject to such rules and restrictions as may be imposed by the Program Administrator, not inconsistent with section 403(b) of the Code and the regulations thereunder.

3.2. **Termination of Participation**. A Participant will continue to participate in the Program until (a) he or she ceases to be an Eligible Employee, (b) the Program is terminated, or (c) his or her contributions under the Program are terminated, whichever occurs first.

4. **VIP Contributions**

4.1. **VIP Contributions**. Contributions to this Program (referred to hereafter as "VIP Contributions") are in addition to any contributions which may be made to the University of Washington Retirement Plan (UWRP), or any State of Washington retirement plan. To make VIP

69837945_3

Contributions, an Eligible Employee must enter into a Contribution Agreement with UW as described in Section 3.1. Under the Contribution Agreement, the employee's Includible Compensation is reduced and the amount of the reduction is forwarded to the Master Administrator.  The employee may not elect to reduce Includible Compensation by more than 75%.

4.2.   **Contribution Minimum**.  A Participant shall be permitted to make contributions under this Program only if the Contribution Agreement provides for annual contributions of at least $200.

4.3.   **Leave of Absence**.  During a leave of absence with pay, VIP Contributions will continue to be made in accordance with the Contribution Agreement, if any, then in effect. No VIP Contributions will be made during a leave of absence without pay.

4.4.   **Limitations on VIP Contributions**.  The total elective deferral contributions transmitted by UW on behalf of the Participant for any calendar year under this Program and all other plans, contracts or arrangements of UW will not exceed the limits imposed by section 402(g) of the Code (without regard to 402(g)(7)) and section 415 of the Code, except as permitted by section 414(v) Code. The limits imposed by sections 402(g), 414(v) and 415 of the Code are herein incorporated by reference.  If for any calendar year the limitations are exceeded because the Participant is also participating in another plan required to be aggregated with this Program for the purposes of section 402(g), 414(v) or 415 of the Code, and such other plan is maintained by UW or a Related Employer, or UW receives from the Participant sufficient information concerning his or her participation in such other plan, then the extent to which VIP Contributions under this Program will be reduced, as compared with the extent to which annual benefits or contributions under any other plans will be reduced, will be determined by UW. If the reduction is under this Program, UW will advise the affected Participants of any limitations on their VIP Contributions required by this Section 4.4.

4.5.   **Return of Excess VIP Contributions**.  If a Participant has VIP Contributions that exceed the limits in effect under section 402(g) or 415 of the Code for the calendar year, he or she may designate the contributions made during a taxable year to this Program as excess VIP Contributions by notifying the Program Administrator of the amount of the excess on or before March 15 of the year following the year in which the excess Contributions occurred. Notwithstanding any other provision of this Program, such excess VIP Contributions, adjusted through December 31 of the year in which the excess VIP Contributions occurred for income, gains, losses or expenses attributable to such excess VIP Contributions, will be distributed no later than April 15 of the year following the year in which the excess contributions occurred. In addition, UW may, in its sole discretion, cause any VIP Contribution in excess of the foregoing limitations, adjusted for income, gains, losses or expenses attributable to such excess VIP Contribution, to be distributed to the Participant to the extent permitted by applicable law.

4.6.   **Rollover Contributions and Transfers.**

   (a)  **Rollover Contributions.**

(1)  **Eligible Rollover Contributions**. A Participant may make a rollover contribution to the Program from a qualified plan described in Code section 401(a), an annuity plan described in Code section 403(a), an annuity contract described in Code section 403(b), an individual retirement account described in Code section 408(a), an individual retirement annuity described in Code section 408(b), a Roth IRA described in Code section 408A, or an eligible plan under Code section 457(b) which is maintained by a state, a political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amount transferred into such plan from this Plan, that accepts the distributee's eligible rollover distribution, upon demonstration to the Program Administrator that such amount qualifies for rollover treatment under the Code.  The Program Administrator may limit the Annuity Contracts or Custodial Accounts to which such amounts may be contributed, or the types of rollovers that will be accepted by the Program.

(2)  **Separate Accounts.**  The Fund Sponsor shall establish and maintain for the Participant a separate account for any eligible rollover contribution paid to the Program and shall further separately account for pre-tax rollover contributions and after-tax rollover contributions.  No such rollover shall be taken into account in applying the limits of Section 4.4.

(b)  **In-Plan Roth Rollovers**.  A rollover contribution received under Section 4.6(a)(1) above or a Pre-Tax Contribution that satisfies the rules for distribution under the Program and qualifies as an "eligible rollover distribution" (as defined in section 402(c)(4) of the Code) if it were to be distributed may be transferred to a Participant's Roth Sub-Account in accordance with section 402A(c)(4) of the Code.  The Program Administrator will maintain such records as are necessary for the proper reporting of in-plan Roth rollovers.

(c)  **Plan-to-Plan Transfers to the Program.**

(1)  At the direction of UW, for a class of employees who are participants or beneficiaries in another plan under section 403(b) of the Code, the Program Administrator may permit a transfer of assets to the Program as provided in this Section 4.6(c).  Such a transfer is permitted only if the other plan provides for the direct transfer of each person's entire interest therein to the Program and the participant is an employee or former employee of UW.  The Program Administrator and any Fund Sponsor accepting such transferred amounts may require that the transfer be in cash or other property acceptable to it.  The Program Administrator or any Fund Sponsor accepting such transferred amounts may require such documentation from the other plan as it deems necessary to effectuate the transfer in accordance with section 1.403(b)-10(b)(3) of the Treasury regulations and to confirm that the other plan is a plan that satisfies section 403(b) of the Code.

(2)  The amount so transferred shall be credited to the Participant's Accumulation Account, so that the Participant or Beneficiary whose assets are being transferred

has an accumulated benefit immediately after the transfer at least equal to the accumulated benefit with respect to the Participant or Beneficiary immediately before the transfer.

(3)  To the extent provided in the Annuity Contract and Custodial Account agreements holding such transferred amounts, the amount transferred shall be held, accounted for, administered and otherwise treated in the same manner as a VIP Contribution, except that (i) the Annuity Contract or Custodial Account which holds any amount transferred to the Program must provide that, to the extent any amount transferred is subject to any distribution restrictions required under section 403(b) of the Code, the Annuity Contract or Custodial Account agreement must impose restrictions on distributions to the Participant or Beneficiary whose assets are being transferred that are not less stringent than those imposed by the transferor plan and (ii) the transferred amount shall not be considered a VIP Contribution in determining the maximum deferral under Section 4.4.

4.7.    **Vesting of Contributions**.  Each contract and certificate issued in accordance with the provisions of the Program is the property of the Participant. Amounts attributable to VIP Contributions shall be nonforfeitable. However, VIP Contributions (or any portion of a VIP Contribution) based on a good faith mistake of fact shall be returned to UW if UW so requests, as provided in Section 10.5.

4.8.    **Quarterly Statement**.  The Program Administrator shall make provision for each Participant to receive a quarterly report summarizing the status of his or her Accumulation Account. A Participant may obtain similar reports or illustrations upon termination of employment or at any other time by writing directly to the Program Administrator or its delegate.

4.9.    **No Reversion**.  Under no circumstances will any VIP Contributions revert to, be paid to, or inure to the benefit of, directly or indirectly, the UW, except as provided in the second sentence of Section 4.7.

4.10.    **Protection of Persons Who Serve in a Uniformed Service**.  An Eligible Employee whose employment is interrupted by qualified military service under section 414(u) of the Code or who is on a leave of absence for qualified military service under section 414(u) of the Code may elect to make additional VIP Contributions upon resumption of employment with UW or any Related Employer equal to the maximum VIP Contributions that the Eligible Employee could have elected during that period if the Eligible Employee's employment had continued (at the same level of compensation) without the interruption or leave, reduced by the VIP Contributions, if any, actually made for the Eligible Employee during the period of the interruption or leave. Except to the extent provided under section 414(u) of the Code, this right applies for five years following the resumption of employment (or, if sooner, for a period equal to three times the period of the interruption or leave).  Without limiting the generality of the foregoing, effective January 1, 2007, to the extent required under section 401(a)(37) of the Code, in the case of a Participant who dies on or after January 1, 2007 while performing qualified military service, the Participant's survivors are entitled to any additional benefits (other than benefit accruals relating to the period of qualified military service) provided under the Program had the Participant resumed

employment with UW in accordance with his or her reemployment rights under the Uniformed Services Employment and Reemployment Rights Act of 1994 and then terminated employment on account of death.

## 5.    Fund Sponsors/Funding Vehicles

5.1.    **Fund Sponsors/Funding Vehicles**.  VIP Contributions are invested in one or more of the Funding Vehicles available to Participants through the Fund Sponsors under this Program. The Fund Sponsors that are available to Participants as of the date of this document are:

A.  Fidelity Retirement Services: P.O. Box 31401 Salt Lake City, UT 84131-9921

B.  Teachers Insurance and Annuity Association and College Retirement Equities Fund (TIAA-CREF): 730 Third Avenue, New York, NY 10017

UW's current selection of Fund Sponsors is not intended to limit future additions or deletions of Fund Sponsors and Funding Vehicles.  The Program Administrator shall maintain a list of all Fund Sponsors under the Program.  Such list is hereby incorporated as part of the Program.  Each Fund Sponsor and UW shall exchange such information as may be necessary to satisfy section 403(b) of the Code or other requirements of applicable law.  In the case of a Fund Sponsor which is not eligible to receive contributions under the Program (including a Fund Sponsor which has ceased to be a Fund Sponsor eligible to receive contributions under the Program, UW shall keep the Fund Sponsor informed of the name and contact information of the Program Administrator in order to coordinate information necessary to satisfy section 403(b) of the Code or other requirements of applicable law.

5.2.    **Allocation of Contributions**.  A Participant may allocate VIP Contributions among Funding Vehicles in any whole number percentages that equal 100 percent.

5.3.    **Fund Transfers**.  Subject to a Funding Vehicle's rules for transfers and in accordance with the provisions of the Code governing the deferral of income tax with respect to Accumulation Accounts, a Participant may specify that a part or all of his or her Accumulation Account in one Funding Vehicle be transferred to another Funding Vehicle.  However, an investment transfer that includes an investment with a Fund Sponsor that is not eligible to receive VIP Contributions is not permitted.

5.4.    **Fund Review Committee.**

(a)  Responsibility. The Fund Review Committee is a standing body responsible for reviewing the performance of Fund Sponsors and Funding Vehicles available through the Program. The Committee will also evaluate and recommend whether new Fund Sponsors or Funding Vehicles should be added and whether existing Fund Sponsors or Funding Vehicles should be removed.

7

If a Funding Vehicle or Fund Sponsor is removed, it shall not be available for subsequent contributions. In addition, the Committee may determine that existing accumulations shall be transferred to one or more other Funding Vehicles specified by the Committee.

The Committee shall meet as often as it deems appropriate, but not less than every six months.  In evaluating existing Fund Sponsors and Funding Vehicles, the Committee will monitor and review performance data, consider participants' comments, requests and concerns. Draft recommendations of the Committee will be presented to and discussed with the Faculty Council on Benefits and Retirement; the Professional Staff Organization and the Association of Librarians of the University of Washington. Final recommendations for changes will be submitted to the Provost and Executive Vice President.

The UW HR Total Benefits Office shall provide support for the Committee's activities. The Committee will assist in the selection of an investment consultant and adopt an investment policy statement to guide their recommendations.

(b) **Membership.**  The Committee shall be appointed by, and serve at the pleasure of, the Provost and Executive Vice President of UW, who will consult with the Faculty Council on Benefits and Retirement,  the Professional Staff Organization and the Association of Librarians of the University of Washington in selecting committee members to represent their constituents. Effective as of May 1, 2013, the membership shall include the following voting representatives and officials:

- One representative of the Faculty Council on Benefits and Retirement;
- Three or more representatives of the Faculty, as recommended by the Faculty Senate Executive Committee;
- One representative of the Librarians, as recommended by the Association of Librarians of the University of Washington;
- One representative of the Professional Staff, as recommended by the Professional Staff Organization;
- One representative of the UW Treasury Office as recommended by the UW Treasurer;
- One representative of the Office of Planning and Budgeting as recommended by the Associate Vice Provost for Planning and Budgeting;
- One Participant representing the Classified or Contract Classified Staff, as recommended by the Vice President, Human Resources, other than the Vice President Human Resources;
- One retired UWRP representative, as recommended by the UW Retirement Association;
- Ex officio, voting members:
  - UW Human Resources - Executive Director of Benefits
  - UW Treasurer, Board of Regents
  - UW Vice President, Human Resources

Nonvoting members shall include:

- One representative each from Human Resources at Central Washington University and Western Washington University.

In appointing members, those groups recommending members and the Provost and Executive Vice President shall seek to identify where possible, individuals who have expertise in the areas of tax and pension law for 403(b) or similar retirement plans, or of finance, investment, or economics.

The Provost and Executive Vice President shall designate the Chair of the Committee. Members shall serve staggered, three year terms. The Chair of the Committee may appoint such committee officers, advisors and subcommittees as needed.

5.5.    **Third Party Trading**.  The Participant may assign responsibility for investment elections and other transactions under the Program to another party, in such manner as may be determined from time to time by the UW HR Total Benefits Office.

## 6.    <u>Benefits</u>

6.1.    **Benefits in General**.  The Participant is entitled to receive benefits under any of the Funding Vehicles at any time and in any form offered by the Fund Sponsors, not inconsistent with section 403(b) of the Code and the regulations thereunder, subject to the written consent of the Participant's spouse, if any, in accordance with Section 6.5. However, distributions attributable to amounts accrued in an annuity contract after December 31, 1988 and amounts accrued in a mutual fund custodial account regardless of date may be paid only after a Participant attains age 59 1/2, severs from employment with UW and all Related Employers, dies or becomes disabled, or in the case of hardship. Hardship distributions are subject to the rules and restrictions set forth in Section 6.3. Distributions to a Participant made prior to attaining age 59 1/2 may be subject to early withdrawal penalties under the Code.

6.2.    **Death Benefits**.  On the death of a Participant, the entire value of each Accumulation Account is payable to the Beneficiary or Beneficiaries named by the Participant under one of the options offered by the Fund Sponsor. However, to the extent such Account has been applied to purchase an annuity, payments shall be made only if and to the extent provided by the form of annuity. The designation of a Beneficiary other than the Participant's spouse, if any, requires the written consent of the spouse in accordance with Section 6.5.

6.3.    **Hardship Distributions**.  Hardship distributions under Section 6.1 shall be approved only if the applicable Fund Sponsor determines that the Participant has an immediate and heavy financial need and the distribution is necessary to satisfy the need. In such cases, there shall be paid to such Participant out of his or her Accumulation Account only such portion of the amount requested as is necessary to prevent or alleviate the hardship. The Program Administrator's determination shall be final and binding.  No amount attributable to income credited after December 31, 1988, on VIP Contributions shall be available for distribution on account of hardship.

The following are deemed to be immediate and heavy financial needs of the Participant: (a) medical expenses described in section 213(d) of the Code incurred by the Participant or his or her spouse or dependents; (b) purchase (excluding mortgage payments) of a principal residence for the Participant; (c) payment of tuition, room and board for the next 12 months of post-secondary education for the Participant, his or her spouse, his or her children or his or her dependents; (d) the payment of amounts necessary to prevent the eviction of the Participant from his or her principal residence or the foreclosure on the mortgage of his or her principal residence; (e) burial or funeral expenses for the Participant's deceased parent, spouse, children or dependents; or (f) expenses for the repair of damage to the Participant's principal residence described in section 165 of the Code.

Hardship distributions will be deemed to be necessary to satisfy an immediate and heavy financial need of the Participant if all of the following are satisfied: (a) the distribution does not exceed the amount of the applicable need under the second paragraph of Section 6.3 increased by taxes resulting from the distribution; (b) the Participant has obtained all distributions, other than hardship distributions, and all nontaxable loans currently available under the Program and any other plan maintained by UW or any Related Employer; and (c) the Participant's VIP Contributions under the Program and his or her elective and employee contributions under any other deferred compensation plan maintained by UW or any Related Employer are suspended for six (6) months after receipt of the hardship distribution.

## 6.4.   Minimum Distribution Requirements.

(a)  All distributions under this Program will be made in accordance with sections 403(b)(10) and 401(a)(9) of the Code, as each is amended and in effect from time to time, and regulations thereunder.  The entire Accumulation Account of each Participant will be distributed over a period not to exceed the life (or life expectancy) of the Participant or over the lives (or life expectancies) of the Participant and a designated Beneficiary. Minimum distributions must begin no later than April 1 of the calendar year following the calendar year in which the Participant attains age 70 1/2, or, if later, April 1 following the calendar year in which the Participant retires from UW. Notwithstanding the above, the Accumulation Account of each Participant as of December 31, 1986 will be distributed in accordance with Treasury regulation 1.403(b)-6(e)(6).  The Participant (or Beneficiary, after the Participant's death) may elect whether to use the permissive recalculation rule for life expectancies under Code section 401(a)(9)(D). Upon the Participant's death after the time benefits are required to begin hereunder, any remaining benefits will be distributed at least as rapidly as under the method of distribution in effect at the time of the Participant's death.

(b)  If the Participant dies before benefit payments are required to begin under the preceding paragraph, any benefits payable to (or for the benefit of) a designated Beneficiary will be paid by the end of the fifth full calendar year after the Participant's death, or will be paid beginning no later than the end of the first full calendar year after the Participant's death over the life of the designated Beneficiary or over a period not exceeding the life expectancy of the designated Beneficiary. If the designated Beneficiary is the surviving

spouse, payment may be delayed until the date the Participant would have attained age 70 1/2.

(c)  In applying the foregoing rules, each Annuity Contract or Custodial Account shall be treated as an individual retirement account (IRA) and distribution shall be made in accordance with the provisions of section 1.408-8 of the Treasury regulations, except as provided in section 1.403(b)-6(e) of the regulations.

(d)  Notwithstanding any other provision of this Article 6, with respect to a Participant or Beneficiary who would have received distributions that are either equal to the 2009 Required Minimum Distributions or the Extended 2009 RMDs, such distributions for 2009 (i) will be received by the Participant or Beneficiary to the extent he or she is invested in the Funding Vehicles of Fund Sponsors other than Vanguard and does not elect otherwise and (ii) will not be received by the Participant or Beneficiary to the extent he or she is invested in the Funding Vehicles of Vanguard and whose 2009 Required Minimum Distributions would have been his or her first required minimum distribution and the Participant or Beneficiary has not elected otherwise.  Participants and Beneficiaries described in the preceding sentence will be given the opportunity to elect to stop receiving the distributions described in the preceding sentence.  In addition, for purposes of Section 6.7, 2009 Required Minimum Distributions distributed by Fund Sponsors other than Fidelity shall not be treated as eligible rollover distributions and 2009 Required Minimum Distributions distributed by Fidelity shall be treated as eligible rollover distributions.

For purposes of this Section 6.4, "2009 Required Minimum Distributions" shall mean the amounts a Participant or Beneficiary would have been required to receive as a required minimum distribution for 2009 but for the enactment of Code section 401(a)(9)(H), "Extended 2009 RMDs" shall mean one or more payments in a series of substantially equal distributions (that include the 2009 Required Minimum Distributions) made at least annually and expected to last for the life (or life expectancy) of the Participant, the joint lives (or joint life expectancy) of the Participant and Beneficiary, or for a period of at least 10 years, "Vanguard" shall mean Vanguard Group of Investment Funds, and "Fidelity" shall mean Fidelity Retirement Services.

6.5.    **Application for Benefits; Spousal Consent**.  Procedures for receipt of benefits are initiated by writing directly to the Fund Sponsor(s). Benefits will be payable by the Fund Sponsor(s) upon receipt of a satisfactorily completed application for benefits and supporting documents. The necessary forms will be provided to the Participant, the surviving spouse, or the Beneficiary by the Fund Sponsor(s). In any case in which Section 6.1 or 6.2 requires the consent of the Participant's spouse, the consent must be in writing, must acknowledge the effect of the election or action to which the consent applies, and must be witnessed by a notary public or a Program representative. Unless the consent expressly provides that the Participant may make further elections without further consent of the spouse, the consent will be effective only with respect to the specific election or form of benefit, or Beneficiary, or both, to which the consent relates. Spousal consent will be effective only with respect to that spouse. Spousal consent will

not be required if it is established to the satisfaction of the Program representative that there is no spouse, or that the spouse cannot be located.

6.6.    **Loans**.  Subject to the Code, any requirements to obtain a Participant's spouse's consent, and the terms of the Funding Vehicles, loans are available to Participants before the commencement of benefit payments from such Funding Vehicle or Vehicles as may be designated by the Program Administrator.

(a)  **Information Coordination Concerning Loans.**  The Program Administrator shall provide or make provision for all information reporting and tax withholding required by applicable federal and state law in connection with distributions and loans. To minimize the instances in which Participants have taxable income as a result of loans from the Program, the Fund Sponsors shall share information as directed by UW, and the Program Administrator shall coordinate or provide for the coordination of the limitations on loans set forth in (b) below, including the collection of information from other Fund Sponsors and the transmission of information requested by any Fund Sponsor, concerning the outstanding balance of any loans made to a Participant under the Program or any other plan of UW or any Related Employer. The Program Administrator shall also collect or provide for the collection of information from other Fund Sponsors and transmit information to other Fund Sponsors concerning any failure by a Participant to repay timely any loans made to a Participant under the Program or any other plan of UW or any Related Employer.

(b)  **Maximum Loan Amount**.  No loan to a Participant under the Program may exceed the lesser of:

(1)  $50,000, reduced by the greater of (i) the outstanding balance on any loan from the Program to the Participant on the date the loan is made or (ii) the highest outstanding balance on loans from the Program to the Participant during the one-year period ending on the day before the date the loan is approved by the Program Administrator (not taking into account any payments made during such one-year period); or

(2)  one half of the value of the Participant's Accumulation Accounts (as of the valuation date immediately preceding the date on which such loan is approved by the Program Administrator).

For purposes of this Section 6.6(b), any loan from any other plan maintained by UW and any Related Employer shall be treated as if it were a loan made from the Program, and the Participant's vested interest under any such other plan shall be considered a vested interest under this Program; provided, however, that the provisions of this paragraph shall not be applied so as to allow the amount of a loan to exceed the amount that would otherwise be permitted in the absence of this paragraph.

6.7.    **Direct Rollover of Eligible Rollover Distributions.**

(a)  **Eligible Rollover Distributions**.

(1)  A Participant or the Beneficiary of a deceased Participant (or a Participant's spouse or former spouse who is an alternate payee under a domestic relations order, as defined in section 414(p) of the Code) who is entitled to an eligible rollover distribution (as defined below) from the Program may elect to have any portion of that distribution paid directly to an eligible retirement plan (as defined below) specified by the Participant in a direct rollover.  In addition, if an eligible rollover distribution is made to a Roth IRA (as such term is defined in section 408A(b) of the Code), the distributee shall recognize ordinary income in the amount of the eligible rollover distribution to the extent provided in section 408A(d)(3)(A) of the Code.

(2)  For purposes of this Section 6.7, an "eligible rollover distribution" means any distribution of all or any portion of a Participant's benefit under the Program to another eligible retirement plan, except that an eligible rollover distribution does not include (i) any installment payment for a period of 10 years or more, (ii) any distribution made as a result of an unforeseeable emergency or other distribution which is made upon hardship of the employee, or (iii) for any other distribution, the portion, if any, of the distribution that is a required minimum distribution under section 401(a)(9) of the Code.

(3)  For purposes of this Section 6.7, an "eligible retirement plan" means an individual retirement account described in section 408(a) of the Code, an individual retirement annuity described in section 408(b) of the Code, a Roth IRA described in section 408A of the Code, a qualified trust described in section 401(a) of the Code, an annuity plan described in section 403(a) or 403(b) of the Code, or an eligible governmental plan described in section 457(b) of the Code.  In the case of a distribution to a Beneficiary who at the time of the Participant's death was neither the spouse of the Participant nor the spouse or former spouse of the participant who is an alternate payee under a domestic relations order, a direct rollover is payable only to an individual retirement account or individual retirement annuity (IRA) that has been established on behalf of the Beneficiary as an inherited IRA (within the meaning of section 408(d)(3)(C) of the Code).

(b)  Each Fund Sponsor shall be separately responsible for providing, within a reasonable time period before making an initial eligible rollover distribution, an explanation to the Participant of his or her right to elect a direct rollover and the income tax withholding consequences of not electing a direct rollover.

(c)  Notwithstanding any provision of this Section 6.7 to the contrary, a direct rollover of a distribution attributable to a Participant's Roth Contributions will only be made to another Roth elective deferral account under an applicable retirement plan described in section 402A(3)(1) of the Code or to a Roth IRA described in section 408A of the Code, and only to the extent the rollover is permitted under the rules of section 402(c) of the code.

## 7.    General Provisions and Limitations Regarding Benefits

69837945_3

7.1.     **Non-Alienation of Retirement Rights or Benefits**.  To the fullest extent permitted by law, no benefit under the Program may at any time be subject in any manner to alienation, encumbrance, the claims of creditors or legal process. No person will have the power in any manner to transfer, assign, alienate, or in any way encumber his or her benefits under the Program, or any part thereof, and any attempt to do so will be void and of no effect. This Program will, however, comply with any judgment, decree or order which establishes the rights of another person to all or a portion of a Participant's benefit under this Program to the extent that it is treated as a qualified domestic relations order under Code section 414(p).  Such payment shall be made without regard to whether the Participant is eligible for a distribution of benefits under the Program.  UW shall establish reasonable procedures for determining the status of any such decree or order and for effectuating distribution pursuant to the domestic relations order, as well as for delegating the responsibility for making such determinations to Fund Sponsors.  The Fund Sponsors may charge a reasonable fee for these services to a Participant by deducting such fee from a Participant's Accumulation Account.

## 8.     Administration

8.1.     **Program Administrator**.  UW is the Program Administrator, and has designated the UW HR Total Benefits Office to be responsible for the day to day administration of the Program.  The UW HR Total Benefits Office may further designate its authority to administer the Plan by a written designation.

8.2.     **Authority of the Program Administrator**.  The Program Administrator has all the powers and authority conferred upon it herein and further shall have final authority to determine, in its discretion, all questions concerning eligibility and contributions under the Program, to interpret all terms of the Program, including any uncertain terms, and to decide any disputes arising under and all questions concerning administration of the Program. Any determination made by the Program Administrator shall be given deference, if it is subject to judicial review, and shall be overturned only if it is arbitrary and capricious. In exercising these powers and authority, UW will at all times exercise good faith, apply standards of uniform application, and refrain from arbitrary action.

8.3.     **Delegation of Authority**.  The Program Administrator may delegate any power or powers to one or more other employees of UW, or to any agent or independent contractor of UW, including the Master Administrator or the Fund Sponsors. Any such delegation shall be in writing, and may be obtained from the Program Administrator.

8.4.     **Suspense Accounts.**   Any reasonable and necessary expense of administering the Program or of any Annuity Contract or Custodial Account, unless paid by UW, a Participant's Annuity Contract or Custodial Account, or from a suspense account established for such purpose by a Fund Sponsor in the nature of "revenue sharing" or similar deposits of asset management fees in excess of a negotiated amount as determined by the Program Administrator or UW, shall be apportioned among and charged against the individual Annuity Contracts and/or Custodial Accounts in such manner as the Program Administrator may direct.  To the extent consistent with the Code and applicable law, expenses allocable to a specific Annuity Contracts or Custodial Accounts (such as loans) may be charged against such Annuity Contracts or Custodial Accounts,

69837945_3

as may be set forth in the Annuity Contract, Custodial Agreement, or other services agreement. Revenue credits deposited in such a suspense account may also be credited to Participants Accumulation Accounts in a manner determined by the Program Administrator.

## 9.    Amendment and Termination

9.1.    **Amendment and Termination**.  While it is expected that this Program will continue indefinitely, UW reserves the right at any time to amend or terminate the Program, or to discontinue any further VIP Contributions under the Program, by resolution of its Board of Regents. If the Program is terminated or if contributions are discontinued, UW will notify all Participants, all Accumulation Accounts will remain nonforfeitable, and all agreements for contributions that have been entered into will become void with respect to salary amounts yet to be earned.

9.2.    **Distribution Upon Termination of the Program**.  UW may provide that, in connection with a termination of the Program and subject to any restrictions contained in the Annuity Contracts and Custodial Account agreements, all Accumulation Accounts will be distributed, provided that UW and any Related Employer on the date of termination do not make contributions to an alternative section 403(b) contract that is not part of the Program during the period beginning on the date of Program termination and ending 12 months after the distribution of all assets from the Program, except as permitted by Treasury regulations.

9.3.    **Limitation**.  Notwithstanding the provisions of Section 9.1, the Board shall not make any amendment to the Program that operates to recapture for UW any contributions previously made under this Program except to the extent permitted by Section 4.7.

## 10.   Miscellaneous

10.1.   **Program Does Not Affect Employment**.  Nothing contained in this Program may be construed as a commitment or agreement on the part of any person to continue his or her employment with UW, and nothing contained in this Program may be construed as a commitment on the part of UW to continue the employment or the rate of compensation of any person for any period. All employees of UW will remain subject to discharge to the same extent as if the Program had never been put into effect.

10.2.   **Claims of Other Persons**.  No provisions in this Program will be construed as giving any Participant or any other person, firm, or corporation any legal or equitable right against UW or its officers, employees, or regents, except for the rights that are specifically provided for in this Program or created in accordance with the terms and provisions of this Program.

10.3.   **Contracts and Certificates**.  In the event there is any inconsistency or ambiguity between the terms of the Program and the terms of the contracts between the Fund Sponsors and UW and/or the Participants and any certificates issued to a Participant under the Program, the terms of the Program control.

69837945_3

10.4.    **Requests for Information**.  Any request for information concerning eligibility, participation, contributions, or other aspects of the operation of the Program should be in writing and directed to the Program Administrator.  Requests for information concerning the Fund Sponsor(s) and their Funding Vehicle(s), their terms, conditions and interpretations thereof, claims thereunder, any requests for review of such claims, may be directed in writing to the Fund Sponsor(s).

10.5.    **Mistaken Contributions**.  If any contribution (or any portion of a contribution) is made to the Program by a good faith mistake of fact, then within one year after the payment of the contribution, and upon receipt in good order of a proper request approved by the UW HR Total Benefits Office, the amount of the mistaken contribution (adjusted for any income or loss in value, if any, allocable thereto) shall be returned directly to the Participant or, to the extent required or permitted by the UW HR Total Benefits Office, to UW.

10.6.    **Governing Law**.  Except as provided under federal law, the provisions of the Program are governed by and construed in accordance with the laws of the State of Washington.