The Honorable Barbara J. Rothstein

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARSHALL HORWITZ, DAVID LAYTON,
RICHARD JOHNSON, and a class of similarly
situated individuals, Plaintiffs,

v.

UNIVERSITY OF WASHINGTON, an agency
of the STATE OF WASHINGTON, Defendant.

No. 2:22-cv-01555 BJR

**DEFENDANT UNIVERSITY OF
WASHINGTON'S OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND**

**ORAL ARGUMENT REQUESTED**

DEFENDANT UNIVERSITY OF WASHINGTON'S
OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
(2:22-cv-01555 BJR)

ROPES & GRAY LLP
10250 CONSTELLATION BOULEVARD
SUITE 1750
CENTURY CITY, CA 90067-6257
T +1 310 975 3300 · F +1 310 975 3400

1

**TABLE OF CONTENTS**

2  INTRODUCTION ..................................................................................................... 1

3  RELEVANT BACKGROUND .................................................................................. 2

4  ARGUMENT ............................................................................................................. 4

5  I.    LEGAL STANDARD.................................................................................... 4

6  II.   PLAINTIFFS' CONTRACT CLAIM NECESSARILY RAISES FEDERAL

7        ISSUES BECAUSE IT RELIES ON FEDERAL RETIREMENT PLAN LIMITS

8        AND EXCESS CONTRIBUTION CLAW-BACK PROCEDURES TO ALLEGE

9        A DUTY.......................................................................................................... 5

10 III.  THE FEDERAL ISSUE IS ACTUALLY DISPUTED BECAUSE THE PARTIES

11       DISAGREE ABOUT THE INTERPRETATION OF IRS PROVISIONS ..................... 7

12 IV.   THE FEDERAL ISSUE RAISED IS SUBSTANTIAL .................................. 9

13 V.    THE FEDERAL ISSUE IS CAPABLE OF RESOLUTION WITHOUT

14       DISRUPTING THE FEDERAL-STATE BALANCE APPROVED BY

15       CONGRESS.................................................................................................... 13

16 CONCLUSION............................................................................................................ 15

17

18

19

20

21

22

23

24

25

26

27

DEFENDANT UNIVERSITY OF WASHINGTON'S
OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
(2:22-cv-01555 BJR)

ROPES & GRAY LLP
10250 CONSTELLATION BOULEVARD
SUITE 1750
CENTURY CITY, CA 90067-6257
T +1 310 975 3300 · F +1 310 975 3400

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**INTRODUCTION**

Federal question jurisdiction exists in this case because Plaintiffs' allegations in the Complaint (ECF No. 1-1) make clear that, at bottom, this action is about whether the University of Washington (the "University") has a duty under federal tax law—directly or by Plan incorporation—to ensure that plan participants maximize employer matches.

The Complaint alleges that the federal Internal Revenue Service's ("IRS") procedures for distributing excess retirement contributions impose a duty on the University of Washington ("University") and that it breached that duty. *See* Plaintiffs' Complaint ("Cmpl.") ¶ 20 ("***Under [federal] tax law***, for excessive contributions [the University] must first 'distribute unmatched elective contributions.'") (emphasis added) (citing IRS, *Fixing Common Plan Mistakes*, https://www.irs.gov/retirement-plans/fixing-common-planmistakes-failure-to-limit-contributions -for-a-participant)).  The Complaint's sole cause of action—a state law breach of contract claim— asserts that the University "breached the contracts by clawing back guaranteed employer contributions in violation of the contract terms ***and [federal] tax law***."  Cmpl. ¶ 97 (emphasis added).  Accordingly, the face of the Complaint—contrary to Plaintiffs' Motion to Remand— plainly establishes that Plaintiffs' claims are grounded in federal tax law.

Tellingly, ***the Complaint cites no express Plan provision*** for this supposed contractual duty.  The ***Plans have no express claw-back duty provision***.  *See generally* UWRP; UWVIP.[1] Indeed, as the University's pending Motion to Dismiss (ECF No. 13) details, no express Plan provision imposes on the University a duty to (i) predict when participants will reach an IRS contribution limit, (ii) notify participants *before* they reach an IRS limit, or (iii) override participants' elective deferral rate in favor of maximizing employer contributions.  *See* Mot. to

---

[1] Courts may consider "judicially noticeable" facts when determining whether they have subject matter jurisdiction. *CopyTele, Inc. v. E Ink Holdings, Inc.*, 962 F. Supp. 2d 1130, 1135 (N.D. Cal. 2013).  This Court may take judicial notice of (i) the University of Washington Retirement Plan (UWRP) Amended and Restated, Effective January 1, 2019 and First Amendment thereto (the "UWRP"); and (ii) the University of Washington Voluntary Investment Program (VIP) Amended and Restated, Effective January 1, 2019 and First Amendment thereto (the "UWVIP," and collectively with the UWRP, "Plans"), which are incorporated by reference in the Complaint (Cmpl. ¶¶ 4, 6) and attached to the Declaration of Amy Jane Longo in Support of Motion to Dismiss as Exhibits A (ECF No. 14-1) and B (ECF No. 14-2), respectively.

DEFENDANT UNIVERSITY OF WASHINGTON'S
OPPOSITION TO PLAINTIFFS' MOTION TO REMAND - 1
(2:22-cv-01555 BJR)

ROPES & GRAY LLP
10250 CONSTELLATION BOULEVARD
SUITE 1750
CENTURY CITY, CA 90067-6257
T +1 310 975 3300 · F +1 310 975 3400

1  Dismiss at 8.

2       Instead, the **Plans expressly disclaim any claw-back duty,** explicitly reserving the

3  University's right to determine the manner in which excess contributions are distributed from the

4  retirement plans.  UWRP § 4.11 ("the extent to which annual contributions under [UWRP] will be

5  reduced, as compared with the extent to which annual benefits or contributions under any other

6  plans will be reduced, will be determined by UW" and the University has the "sole discretion" in

7  clawing back excess contributions); UWVIP § 4.5 (the University has the "sole discretion" in

8  clawing back excess contributions).

9       Therefore **the only possible source of a claw-back duty alleged in the Complaint is federal**

10 **tax law**: (i) the IRS excess contribution claw-back procedures—incorporated by reference in the

11 Complaint, Cmpl. ¶ 20; (ii) the federal retirement plan limits—incorporated by reference in the

12 Plans, UWRP § 4.11; UWVIP §§ 4.4-4.5; or (iii) some combination of both.  Accordingly, the face

13 of the Complaint and the Plans—contrary to Plaintiffs' Motion to Remand—plainly establish that

14 this action arises under federal tax law and was therefore properly removed.

15                    **RELEVANT BACKGROUND**[2]

16       **_The UWRP, UWVIP, Contribution Limits, and Claw-Back Procedures._**  The University

17 sponsors two retirements plans for certain eligible employees: the UWRP and UWVIP.   As

18 covered in the University's Motion to Dismiss, eligible employees who do not opt into the

19 Washington State Retirement System are required to participate in the UWRP and may also

20 voluntarily participate in the UWVIP—with each Plan offering a distinct array of benefits.  *See*

21 Mot. to Dismiss at 2, 11.  Plaintiffs' Complaint focuses on one distinction between these two plans.

22 Under the UWRP, the University matches employee contributions, while under the UWVIP it does

23 not.  Cmpl. ¶ 9; UWRP § 4.1 ("UW will make a matching contribution equal to each Participant

24 contribution").  This suit has arisen, however, because the UWRP and the UWVIP incorporate

25 federal retirement plan limits, meaning both plan participants' contributions and the University's

26

27 _____
[2] The Relevant Background is taken from the Complaint for purposes of this Opposition to Motion to Remand only.

DEFENDANT UNIVERSITY OF WASHINGTON'S
OPPOSITION TO PLAINTIFFS' MOTION TO REMAND - 2
(2:22-cv-01555 BJR)

ROPES & GRAY LLP
10250 CONSTELLATION BOULEVARD
SUITE 1750
CENTURY CITY, CA 90067-6257
T +1 310 975 3300 · F +1 310 975 3400

matching contributions are subject to certain contribution caps.  The UWRP and UWVIP are intended to qualify as 403(b) plans under the Internal Revenue Code.  *See* 26 U.S.C. § 403(b).  To maintain a plan's tax-advantaged status under § 403(b), the University must ensure, among other things, that plan participants do not exceed § 402(g)'s elective deferral limit, § 401(a)(17)'s maximum compensation limit, or § 415(c)'s annual additions limit.  26 C.F.R. § 1.415(a)-1(d)(1) dictates that plan administrators cease contributions when a plan participant reaches the annual additions limit before the year's end.  When a plan administrator fails to do so, it is considered an excess contribution.  26 C.F.R. § 1.403(b)-(4)(f) ("Any contribution made for a participant to a section 403(b) contract for the taxable year that exceeds the maximum annual contribution . . . or elective deferral limit . . . constitutes an excess contribution").

Plaintiffs' Complaint highlights the IRS's Employee Plan Compliance Resolution System ("EPCRS") on the IRS webpage, which provides administrative leniency for certain regulatory violations by setting out steps that a plan administrator *may* take to address excess contributions and other common ministerial mistakes.  *See* Cmpl. ¶ 20 (citing IRS, *Fixing Common Plan Mistakes*, *supra*).  Chief among them, in Plaintiffs' view, is EPCRS's direction to first "distribute unmatched elective contributions," and only distribute matched contributions if "excess remains."  *Id.*  The Complaint alleges that by ceasing contributions before they achieved the maximum matching contribution under the UWRP, instead of continuing to make excess contributions and then clawing back unmatched UWVIP contributions, the University violated this EPCRS directive.  *Id.* ¶¶ 26-29, 90, 97.   While the University disagrees, the Complaint alleges that it is from this body of federal tax law that the Plans incorporate a contractual duty for the University to ensure participants maximize their employer match.

***Procedural Posture.***  Plaintiffs filed the Complaint in King County Superior Court on September 22, 2022.  The University removed the action on November 2, 2022 (ECF No. 1) and moved to dismiss the Complaint on November 18, 2022 (ECF No. 13).  Plaintiffs moved to remand the action on December 2, 2022 (ECF No. 15) and then, on December 6, 2022, to extend the deadline to respond to the University's Motion to Dismiss until after the Court ruled on the Motion

DEFENDANT UNIVERSITY OF WASHINGTON'S
OPPOSITION TO PLAINTIFFS' MOTION TO REMAND - 3
(2:22-cv-01555 BJR)

ROPES & GRAY LLP
10250 CONSTELLATION BOULEVARD
SUITE 1750
CENTURY CITY, CA 90067-6257
T +1 310 975 3300 · F +1 310 975 3400

to Remand (ECF No. 16), which the Court granted (ECF No. 18).

## ARGUMENT

### I.   LEGAL STANDARD

A defendant is entitled to remove a lawsuit that could have originally been brought in federal district court. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.* (*Grable*), 545 U.S. 308, 312 (2005); 28 U.S.C § 1441(a).  Jurisdiction exists pursuant to 28 U.S.C. § 1331 when a federal question is presented on the face of the plaintiff's complaint. *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998); *see also* 28 U.S.C. § 1447 (c).  Courts may consider "judicially noticeable" facts when determining whether subject matter jurisdiction exists. *CopyTele, Inc. v. E Ink Holdings, Inc.*, 962 F. Supp. 2d 1130, 1135 (N.D. Cal. 2013).  The party asserting federal jurisdiction bears the burden of establishing that jurisdiction existed at the time of removal. *Prize Frize, Inc. v. Matrix Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999).

Federal question jurisdiction exists over an action that asserts only a state law claim when "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *Grable*, 545 U.S. at 314-15 (same); *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1086 (9th Cir. 2009) (same).  "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313–14).

Plaintiffs argue that remand is appropriate because of certain differences between the circumstances warranting federal question jurisdiction in *Grable* compared to this action. Mot. to Remand at 2-3.  As a preliminary matter, Plaintiffs' characterization of the Supreme Court's opinion in *Grable* is incorrect.  Plaintiffs state that the Supreme Court in *Grable* held that "removal of a state-law complaint . . . requires proof of several critical factors," *id.* at 1, and then list seven supposed factors they apparently paraphrased from *Grable's* particular facts. *See id.* at 2-3 (citing

1   *Grable*, 545 U.S. at 312-19).  But *Grable* does not lay out a "seven factor" test, and the test for

2   federal question jurisdiction over a state law claim is not based on whether the case is factually

3   similar to *Grable*.  Rather, courts' application of *Grable*'s four-part test is an individualized

4   assessment of the case at hand.  *See Grable*, 545 U.S. at 314 (There is no "'single, precise, all-

5   embracing' test for jurisdiction over federal issues embedded in state-law claims between

6   nondiverse parties." (Stevens, J., concurring) (quoting *Christianson v. Colt Indus. Operating*

7   *Corp.*, 486 U.S. 800, 821 (1988)).  Indeed, any such reliance on this approach was quashed by

8   *Gunn v. Minton*, where the Court engaged in an individualized assessment to determine whether

9   the four *Grable* requirements were met.  568 U.S. 251, 258-64 (2013).

10  **II.     PLAINTIFFS' CONTRACT CLAIM NECESSARILY RAISES FEDERAL ISSUES**

11  **BECAUSE IT RELIES ON FEDERAL RETIREMENT PLAN LIMITS AND**

12  **EXCESS CONTRIBUTION CLAW-BACK PROCEDURES TO ALLEGE A DUTY**

13          Plaintiffs' Motion to Remand effectively concedes that the Complaint's breach-of-contract

14  claim relies on alleged obligations of the University arising from federal tax law.  *See* Mot. to

15  Remand at 4-5 ("The contract itself, *i.e.*, the retirement plan, incorporates tax law . . . . [T]he plans

16  require the plan administrator to comply with IRS requirements.").  However, Plaintiffs argue that

17  (1) such alleged federal tax law obligations only raise questions of fact, and (2) the alleged federal

18  duties have been transformed into questions of state contract law.  *See id.* at 5-6 (arguing

19  incorporation "makes the provisions of federal law" state law).  Both of Plaintiffs' arguments are

20  incorrect, and the question of whether federal tax law imposes a duty on the University to ensure

21  plan participants maximize employer matches is critical to the Complaint, which therefore

22  necessarily raises a federal question.

23          A federal issue is "necessarily raised" when vindication of a state law claim turns on the

24  construction of federal law.  *Hornish v. King Co.*, 899 F.3d 680, 690 (9th Cir. 2018) ("the

25  vindication of Plaintiffs-Appellants' rights under state law necessarily turns on some construction

26  of federal law" (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9

27  (1983) (cleaned up)).  Here, the federal issue is necessarily raised because, under Washington

DEFENDANT UNIVERSITY OF WASHINGTON'S
OPPOSITION TO PLAINTIFFS' MOTION TO REMAND - 5
(2:22-cv-01555 BJR)

ROPES & GRAY LLP
10250 CONSTELLATION BOULEVARD
SUITE 1750
CENTURY CITY, CA 90067-6257
T +1 310 975 3300 · F +1 310 975 3400

contract law, Plaintiffs must show that the University owed and breached a duty to plan participants. *See Reger v. Dell Marketing L.P.*, 2022 WL 3025790, at *3 (Wash. App. Aug. 1, 2022); Restatement (Second) Contracts § 235(b) (1979) (breach of contract). The essence of Plaintiffs' contractual duty theory is that federal tax excess contribution claw-back procedures impose a duty, and that duty is incorporated in the Plans. Throughout, the Complaint alleges that the plan contracts incorporate federal tax contribution limits—and related excess contribution claw-back procedures—that allegedly impose a duty on the University to notify participants when they may potentially make excess UWVIP contributions and then override participant elections to guarantee participants the maximum University-match. Cmpl. ¶¶ 17-29, 90, 97. Indeed, contrary to Plaintiffs' Motion to Remand, the state law contract claim pled in the Complaint appears to turn entirely on construing the meaning of these IRS provisions—specifically, construing them to impose a duty on the University. *See Hornish*, 899 F.3d at 689-90; *see also Bd. of Comm'rs of SE La. Flood Prot. Auth.—E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 723 (5th Cir. 2017) ("Supreme Court precedent is clear that a case arises under federal law where 'the vindication of a right under state law necessarily turn[s] on some construction of federal law,' and the Board's negligence nuisance claims thus cannot be resolved without a determination whether multiple federal statutes create a duty of care . . . ." (quoting *Franchise Tax Bd.*, 463 U.S. at 9) (internal alterations omitted)). Whether IRS provisions impose a duty on plan administrators, owed to plan participants—and the scope and content of any such duty—is plainly a question of federal law, not fact; and is therefore "necessarily raised" by Plaintiffs' contract claim.

Incorporating federal retirement contribution limits into the Plans does not, as Plaintiffs contend, Mot. to Remand at 5, transmogrify the interpretation of federal law into a question of state contract law. *N.Y.C. Health and Hosp. Corp. v. WellCare of N.Y., Inc.*, 769 F. Supp. 2d 250, 256 (S.D.N.Y. 2011) ("[The plaintiff's] breach of contract claim necessarily raises the issue of whether [the defendant] violated the Medicare laws and regulations incorporated by reference into its contract with CMS. Accordingly, the first part of the *Grable* test is met."); *see also Armstead v. Wash. State Dept. of Enter. Servs.*, 2022 WL 837534, at *3 (W.D. Wa. Mar. 3, 2022) (finding

DEFENDANT UNIVERSITY OF WASHINGTON'S
OPPOSITION TO PLAINTIFFS' MOTION TO REMAND - 6
(2:22-cv-01555 BJR)

ROPES & GRAY LLP
10250 CONSTELLATION BOULEVARD
SUITE 1750
CENTURY CITY, CA 90067-6257
T +1 310 975 3300 · F +1 310 975 3400

that a federal issue was necessarily raised because plaintiff's conversion claim turned on an interpretation of the CARES Act).

In support of their argument that the incorporation of federal tax law in a contract somehow transforms it into a question of state law, Plaintiffs misplace their reliance on "governing law" language in the Plans to argue that only state law applies.  That language plainly states that interpretation of the plan contracts is subject to both federal law and state law.  *See* Mot. to Remand at 5-6 (quoting UWVIP § 10.6) ("***Except as provided under federal law***, the provisions of the Program are governed by and construed in accordance with the laws of the State of Washington." (emphasis added)); *see also* UWVIP §§ 2.13, 4.3, 4.11, 5.1, 5.1(a), 7.6, 10.2 (subjecting various plan provisions to the IRS Code).

The cases Plaintiffs cite in support of this contract transformation theory (i) do not assert that incorporated federal law at issue *becomes* state law; (ii) are not removal or remand cases; and (iii) stand only for the elementary principle that parties can create contractual duties to follow federal law—which they can then sue to enforce in state and federal court to the extent either has jurisdiction—even if the federal law provides no private right of action.  *See Vizcaino v. Microsoft*, 97 F.3d 1187, 1197-98 (9th Cir. 1999) (rejecting defendant's claim that because the IRS provision incorporated into its contract provided no private right of enforcement, plaintiff could not therefore sue for breach of this contractually incorporated provision); *P.E.L. v. Premera Blue Cross*, 520 P.3d 486, 491 (Wash. Ct. App. Nov. 21, 2022) (holding that even though the Affordable Care Act provided no private cause of action, plaintiff could sue to enforce defendant's contractual promise to comply with its provisions).  Here, the Complaint necessarily raises a federal issue because Plaintiffs' contract claim requires this Court (or any other) to construe federal tax law to determine whether there exists a contractual duty.

## III.    THE FEDERAL ISSUE IS ACTUALLY DISPUTED BECAUSE THE PARTIES DISAGREE ABOUT THE INTERPRETATION OF IRS PROVISIONS

Similarly, Plaintiffs' Motion to Remand itself appears to dispute the federal issue.  Despite summarily claiming that this requirement is not met, Mot. to Remand at 4, Plaintiffs—clinging to

DEFENDANT UNIVERSITY OF WASHINGTON'S
OPPOSITION TO PLAINTIFFS' MOTION TO REMAND - 7
(2:22-cv-01555 BJR)

ROPES & GRAY LLP
10250 CONSTELLATION BOULEVARD
SUITE 1750
CENTURY CITY, CA 90067-6257
T +1 310 975 3300 · F +1 310 975 3400

their contract transformation theory—write: "[T]he UW retirement plans . . . explicitly refer to tax code provisions that [the University] must comply with to be effective . . . . **Thus, tax code provisions in the plans are cited in the complaint to indicate some of the [University's] *contractual* duties as plan administrator.**" *Id.* at 5 (bold added, italics are Plaintiffs' own).

As Plaintiffs' Complaint reveals, a dispute over federal tax law lies at the heart of this case. It is federal tax law that establishes the underlying contribution cap that each named plaintiff alleges he ran up against.  Cmpl. ¶¶ 13-14, 42, 46-47, 65, 73, 85.  It is federal tax law, either standing alone or through its incorporation into the contract, that the Complaint alleges imposes a duty on the University to "advise plan participants of any excess contributions so that they may correct those contributions by the April 15th deadline." *Id.* ¶ 22; *see also id.* ¶¶ 17-21, 23-25, 90. And it is federal tax law, again, alone and through incorporation in the Plans, that allegedly prohibits the University from clawing back matching contributions—the sole stated breach in Plaintiffs' "Claim for Breach of Contract" section.  *Id.* ¶ 97 ("The retirement plans are written contracts with all plan participants, including plaintiffs.  The [University] breached the contracts by clawing back guaranteed employer contributions in violation of the contract terms and tax law."); *see also id.* ¶¶ 20, 29, 90.

This suit has only arisen because the University disagrees with the Complaint's interpretation that certain IRS provisions impose a duty on plan administrators.  *See Armstead*, 2022 WL 837534, at *3 (finding that a federal issue was actually disputed because the plaintiff "assert[ed] that federal law prohibited taking more than 5% of his EIP and specifically cites the IRS notice, which itself refers to the CARES Act [and the] Defendants disagree[d]").  Therefore, the federal issue—whether federal tax law imposes a duty on the University to ensure plan participants' contributions maximize employer matches—is both necessarily raised and actually disputed.  Contrary to Plaintiffs' argument in their Motion to Remand, this is true at least in part *because* the federal retirement contribution limits are incorporated by reference in the Plans—not despite that fact.

DEFENDANT UNIVERSITY OF WASHINGTON'S
OPPOSITION TO PLAINTIFFS' MOTION TO REMAND - 8
(2:22-cv-01555 BJR)

ROPES & GRAY LLP
10250 CONSTELLATION BOULEVARD
SUITE 1750
CENTURY CITY, CA 90067-6257
T +1 310 975 3300 · F +1 310 975 3400

**IV.    THE FEDERAL ISSUE RAISED IS SUBSTANTIAL**

Plaintiffs argue that the federal issue must be dispositive to be "substantial," relying on out-of-circuit, outdated authority.  Mot. to Remand at 4 (citing *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (2006)).  First, whether the University has a duty under federal tax law—directly or by Plan incorporation—to ensure plan participants maximize employer matches is dispositive of this case: that is the critical question in dispute.  Second, however, the substantiality requirement does not mandate that the federal issue be dispositive of the case. The Supreme Court has made clear that the substantiality requirement concerns the importance of the federal issue raised to the federal system as a whole, not to the parties or the case.  *Gunn*, 568 U.S. at 260 (2013).  An issue does not become any less substantial to the federal government when the case includes additional issues.  To hold otherwise would allow plaintiffs to escape embedded jurisdiction by tacking on an insubstantial claim, an approach roundly rejected in other cases considering jurisdictional issues. *E.g., Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (fraudulent joinder).

Precedential and in-circuit authority weigh the importance of a federal issue *to the case* in assessing whether the issue is "actually disputed."  *See Grable*, 545 U.S. at 315 ("the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case"); *Armstead*, 2022 WL 837534, at *3 (finding that because the federal law question was "not a mere peripheral issue" it was "actually disputed").  But no matter where consideration of this issue is slotted, neither *Grable, Empire Healthchoice*, *Gunn*, nor any other Ninth Circuit precedent require the "decision on the federal question [to] resolve the case," as Plaintiffs' Motion to Remand argues.  Mot. to Remand at 4 (quoting *Mikulski*, 501 F.3d at 570).  As explained in Section II, *supra*, the federal issue must simply extend beyond the "peripheral," *see Armstead*, 2022 WL 837534, at *3—*i.e.*, be "actually disputed."  *Id.*  The federal issue here plainly meets this requirement because whether federal tax law imposes a duty on plan administrators to ensure participants maximize employer matches is the predominating question in this case.

The interpretation of federal tax law required in this case meets the substantiality requirement.  "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to

DEFENDANT UNIVERSITY OF WASHINGTON'S
OPPOSITION TO PLAINTIFFS' MOTION TO REMAND - 9
(2:22-cv-01555 BJR)

ROPES & GRAY LLP
10250 CONSTELLATION BOULEVARD
SUITE 1750
CENTURY CITY, CA 90067-6257
T +1 310 975 3300 · F +1 310 975 3400

the federal system as a whole." *Gunn*, at 568 U.S. at 260. While there is no "'single, precise, all-embracing' test," *Grable*, 545 U.S. at 314 (quoting *Christianson*, 486 U.S. at 821), the Supreme Court and the Ninth Circuit have nonetheless identified various traits including "[t]he broader significance of the . . . question for the Federal Government," *Gunn*, 568 U.S. at 260; the need to avoid "undermin[ing] the development of a uniform body of [federal] law" through inconsistent state court decisions, *Gunn*, 568 U.S. at 261 (cleaned up); and whether the case "present[s] a nearly pure issue of law . . . that could be settled once and for all . . . ." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) (internal citation and quotation marks omitted). Plaintiffs' position that federal excess contribution claw-back procedures impose duties on plan administrators owed to plan participants—duties that oblige plan administrators to alter participants' elective deferrals before any excess contributions actually occur—undoubtedly qualifies as a substantial federal issue.

First, accurate interpretation of the IRS procedures relied on in Plaintiffs' Complaint, *see, e.g.*, Cmpl. ¶ 20, is significant to the federal government. *See City of Oakland v. BP PLC*, 969 F.3d 895, 905 (9th Cir. 2020) (finding that a case is significant to the federal government when it "raises substantial questions as to the interpretation . . . of a federal statute . . . ."). Like *Grable*—where "the Government ha[d] a strong interest in the 'prompt and certain collection of delinquent taxes'"—the federal government has a strong interest in the correct interpretation of federal retirement plan contribution limits and excess contribution claw-back procedures. *See* 545 U.S. at 315 (quoting *United States v. Rodgers*, 461 U.S. 677, 709 (1983)). The IRS and the federal government generally have an interest in the availability of a federal forum for disputes impacting the entities they regulate going forward.

Second, the Complaint's position is that IRS provisions impose independent duties on plan administrators to plan participants—even for state governmental plans that are not subject to ERISA and the DOL's implementation thereof. This position implicates the retirement plan industry as a whole and especially the regulated entities who must navigate federal tax eligibility rules. In other words, the Complaint raises a "substantial" federal issue because the federal tax

DEFENDANT UNIVERSITY OF WASHINGTON'S
OPPOSITION TO PLAINTIFFS' MOTION TO REMAND - 10
(2:22-cv-01555 BJR)

ROPES & GRAY LLP
10250 CONSTELLATION BOULEVARD
SUITE 1750
CENTURY CITY, CA 90067-6257
T +1 310 975 3300 · F +1 310 975 3400

law rules concerning tax advantaged retirement accounts are part of a "complex federal regulatory scheme . . . as to which there is 'a serious federal interest in claiming the advantage thought to be inherent in a federal forum.'" *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005) (quoting *Grable*, 545 U.S. at 313); *see Tenn. Gas Pipeline Co.*, 850 F.3d at 722 (affirming finding of substantiality where the district court found that "the relevant federal statutes plainly regulate[d] 'issues of national concern and . . . affect[ed] 'an entire industry' rather than a few parties"). A state court decision that conflicted with, or even muddied, the IRS's excess contribution claw-back procedures and interpretations thereof could reverberate through the retirement plan industry. Plan-sponsoring employers, who must comply with IRS rules to maintain their programs' tax-advantaged status, may be faced with a disrupted federal scheme and an impossible choice: IRS noncompliance or copy-cat suits.

The risk that state court rulings could "undermine the development of a uniform body of [tax] law" is only reinforced by the fact that this case is neither "hypothetical" nor "fact-bound and situation-specific." *Gunn*, 568 U.S. at 261-63 (cleaned up). To start, it involves a live tax-related dispute that will require a decision with prospective effect. *See* Mot. to Remand at 6-7. That fact separates this case from *Gunn*, where the Supreme Court emphasized that the case-within-a-case analysis required in a patent infringement-based malpractice suit did not raise a "substantial" federal issue because the questions concerning federal patent infringement cases would be "posed in a merely hypothetical sense" and would "not change the real-world result of the prior patent litigation." 568 U.S. at 261.

Plaintiffs' claim that this case is "fact-specific" is not determinative as to whether the federal issue is substantial and is conspicuously at war with their request for class-based relief. Mot. to Remand at 6; Cmpl. ¶¶ 92-93 ("There are common questions of law and fact that pertain to the class, *e.g.*, may the University claw back guaranteed employer contribution?"). Indeed, individual issues including reliance and damages will preclude Plaintiffs from seeking mandatory class certification, but the allegations in the Complaint (upon which eligibility for removal is determined) nonetheless rely on the existence of a duty sourced from federal tax law—not factual

DEFENDANT UNIVERSITY OF WASHINGTON'S
OPPOSITION TO PLAINTIFFS' MOTION TO REMAND - 11
(2:22-cv-01555 BJR)

ROPES & GRAY LLP
10250 CONSTELLATION BOULEVARD
SUITE 1750
CENTURY CITY, CA 90067-6257
T +1 310 975 3300 · F +1 310 975 3400

questions like in *Stechler v. Sidley Austin Brown & Wood*, *Martinez v. Transportation Management, LLC*, and *Empire Healthchoice*.  *See* Mot. to Remand at 6-7.

*Stechler* specifically found, contrary to the allegations in the Complaint here, that the plaintiff's malpractice claim did not require an assessment of tax shelter's legality.  2006 WL 90916, at *7 (D. N.J. Jan. 13, 2006) (quoting *Sheridan v. New Vista, L.L.C.*, 2005 WL 2090898, at *4 (W.D. Mich. Aug. 30, 2005)).  The question was instead whether the defendant knew or should have known that its advice was invalid—a fact-dependent inquiry.  *Id.*[3]  *Martinez* rejected a theory premised on the fact that "the violations of state labor laws alleged *could* . . . give rise to federal tax liability" for withholding incomes, FICA, Medicare, and unemployment tax.  2008 WL 4951503, at *4 (C.D. Cal. Nov. 17, 2008) (emphasis added). *Empire Healthchoice* involved a fact-intensive accounting exercise: what portion of a state court personal injury settlement was a health plan administrator entitled to as reimbursement, less "overcharges," "duplicative charges," and "unrelated" services?  547 U.S. at 700-01; *see* 13D Wright & Miller, Fed. Prac. & Pro.§ 3562 (3d ed. 2022) ("it was not clear that adjudication of the merits in *Empire Healthchoice* would require *any* assessment of federal law" (emphasis added)).

By contrast, the key issue here is whether IRS procedures required the University to notify Plaintiffs of the possibility of excess contributions or otherwise ensure they received the maximum possible UWRP employer-matching contributions despite participant direction to the contrary. Cmpl. ¶¶ 17-29, 90, 97.  Unlike an assessment of whether a defendant knew or should have known that the tax advice they were giving was wrong (as in *Stechler*), an assessment of whether the eventual success of a plaintiff's state wage law claim would mean that the defendant made incorrect withholdings (as in *Martinez*), or an assessment of the settlement share an individual entity is entitled to (as in *Empire*), the allegations in Plaintiffs' Complaint turn on the existence of any duty, which is a question of law.

---

[3] In *Stechler*, the legal question was effectively already resolved:  The plaintiffs had settled the IRS audit stemming from the tax strategy, and the IRS had issued two notices warning that the tax shelter strategy at issue was impermissible and later enacted a regulation outlawing the practice. *Stechler*, 2006 WL 90916, at *4, *6 ("there is no real issue as to the legality of the Strategy").

DEFENDANT UNIVERSITY OF WASHINGTON'S
OPPOSITION TO PLAINTIFFS' MOTION TO REMAND - 12
(2:22-cv-01555 BJR)

ROPES & GRAY LLP
10250 CONSTELLATION BOULEVARD
SUITE 1750
CENTURY CITY, CA 90067-6257
T +1 310 975 3300 · F +1 310 975 3400

**V.   THE FEDERAL ISSUE IS CAPABLE OF RESOLUTION WITHOUT DISRUPTING THE FEDERAL-STATE BALANCE APPROVED BY CONGRESS**

Plaintiffs argue that resolving this case in federal court would disrupt the federal-state court balance because "allowing removal because a contract governed by state law incorporates federal law, as UW maintains, would at least mean that, even though ERISA exempts government plans and such plans are governed by state law, every case involving a government retirement plan would be removable to federal court." Mot. to Remand at 6. This argument is a strawman—and the cases marshaled in support of it, off-point.

This action is subject to federal question jurisdiction not because it is a government plan exempt from ERISA, but because it necessarily raises an actually disputed federal issue concerning the interpretation of federal excess contribution claw-back provisions. The fact that it is a state government plan merely means that ERISA and the Department of Labor's regulations and guidance thereunder impose no fiduciary duty on plan administrators. Federal jurisdiction is proper here because, on the face of the Complaint, Plaintiffs assert that IRS claw-back procedures—the procedures themselves, through the Plans, or both—impose certain duties on the University. The existence of those federal tax law-based duties is entirely a question of federal tax law and is therefore properly before this court, and *Martinez*, *Craddock*, and *Stechler* do not suggest otherwise. Resolving in federal court whether IRS provisions require the University to ensure plan participants maximize employer matches does not implicate the state government plan exception to ERISA's fiduciary duties.

Instead, resolving this case in federal court comports with *Grable's* fourth requirement. To exercise federal question jurisdiction over state law claims, courts must ensure that doing so would not "herald[] a potentially enormous shift of traditionally state cases into federal courts." *Grable*, 545 U.S. at 319. Exercising jurisdiction here, however, would not "swamp" the federal courts. Wright & Miller, *supra*, § 3562.

Here, like in *Grable*, "it is the rare" state-run retirement plan action "that involves contested issues of federal law." *See Grable*, 545 U.S. at 319. However, Plaintiffs' theory of a contractual

ROPES & GRAY LLP
10250 CONSTELLATION BOULEVARD
SUITE 1750
CENTURY CITY, CA 90067-6257
T +1 310 975 3300 · F +1 310 975 3400

duty is particularly unique.   There is nothing in the way of excess contribution claw-back procedures under Washington Law: the IRS provisions apply.   And even with this distinction aside, finding that this Court has jurisdiction to decide this issue does not mean that jurisdiction must exist in any future state-run retirement plan litigations.   As the Fifth Circuit recently noted:

> If the federal statutes at issue in this case do create duties and obligations under the laws of various states, then it might be inappropriate for federal jurisdiction to obtain *every time* a state-law claim is made on that basis. But where . . . one of the primary subjects of dispute between the parties is whether the federal laws in question may properly be interpreted to do that *at all*, the implications for the federal docket are less severe.

*Tenn. Gas Pipeline Co.*, 850 F.3d at 725 (emphasis added).   Instead, for much the same reasons Plaintiffs' state law breach-of-contract claim raises a substantial federal issue, resolving this case in federal court accords with congressionally approved federal-state court balance.

The cases that Plaintiffs cite are inapposite.   Despite Plaintiffs' claim that *Martinez* "illustrated" that allowing removal in this case would mean "every case involving a government retirement plan" floods into federal court, Mot. to Remand at 6, that case never considered the issue.   There, the court's decision to remand rested on its rejection of the extremely attenuated connection, if any, the case had to federal law—that "the violations of state labor laws alleged *could*, if proved, give rise to federal tax liability," *Martinez*, 2008 WL 4951593, at \*4—and its determination that the federal statutory employee-independent contractor definition did not apply, and thus was not even "necessarily raised." *Id.* at \*5.   Here, by contrast, resolving in federal court Plaintiffs' theory that federal tax law imposes a duty on plan administrators to ensure that plan participants' contributions are structured to maximize employer contributions would not herald any flood: it would instead, for the reasons explained, preserve uniformity under federal tax law.

*Craddock* is inapposite because the defendant urged the court to exercise jurisdiction to determine whether eighty percent of its employees were covered under the Fair Labor Standards Act, a requirement written into the West Virginia minimum wage law that the plaintiff's suit invoked.   2011 WL 1601331, at \*1.   As the *Craddock* court noted, that would mean any case brought under the state minimum wage law could be removed to federal court to have this highly factual issue resolved. *Id.* at \*6, \*6 n.2.   By contrast, there is no inherent federal jurisdiction when

DEFENDANT UNIVERSITY OF WASHINGTON'S
OPPOSITION TO PLAINTIFFS' MOTION TO REMAND - 14
(2:22-cv-01555 BJR)

ROPES & GRAY LLP
10250 CONSTELLATION BOULEVARD
SUITE 1750
CENTURY CITY, CA 90067-6257
T +1 310 975 3300 · F +1 310 975 3400

1    a plaintiff merely contends that a state-run retirement plan has been mismanaged.   Federal

2    jurisdiction has only arisen here because of Plaintiffs' IRS-centered duty—a theory that, given

3    clear IRS procedures dictating that the University take the opposite course, is ill-fated and unlikely

4    to recur.   *See* Mot. to Dismiss at 6-8, 11 (detailing the flaws of Plaintiffs' IRS duty and breach

5    claim).   Indeed, Plaintiffs appear to recognize that there exists no risk in disrupting federal and

6    state court balance, because they state: "The outcome of the case will not control any other cases;

7    each case of this nature will be fact-specific."   Mot. to Remand at 6.

8          Finally, Plaintiffs' reliance on the out-of-circuit case *Stechler*, *see* Mot. to Remand at 7, is

9    misplaced because the factual allegations in that case did "not call into question the proper

10   interpretation of federal tax law," *Stechler*, 2006 WL 90916, at *7 (quoting *Sheridan*, 2005 WL

11   2090898, at *4)), whereas here, the Complaint does.   The concern in *Stechler*, that a "state law

12   claim alleging a fraudulent or unreasonable interpretation of federal law" should not be sufficient

13   to trigger federal jurisdiction, is not only *dicta, id.* at *6, but inapposite to this case, where

14   Plaintiffs' sole breach-of-contract claim relies entirely on the existence of a duty sourced from

15   federal law.   And most importantly, the Supreme Court addressed malpractice claims in *Gunn*,

16   finding that the federal-state balance would have been upset because the state's "special

17   responsibility" and "interest" in the regulation of lawyers was not counterbalanced by a federal

18   interest in the "a *hypothetical* patent issue."   568 U.S. at 264 (emphasis added) (internal citations

19   and quotation marks omitted).   Instead, and in short, resolving in this Court whether federal tax

20   law imposes a duty on plan administrators to ensure plan participants maximize employer matches

21   would not run contrary to the congressionally approved balance between federal and state courts.

22                                    **CONCLUSION**

23         For the reasons set forth above, Plaintiffs' motion to remand should be denied.

24

25

26

27

ROPES & GRAY LLP
10250 CONSTELLATION BOULEVARD
SUITE 1750
CENTURY CITY, CA 90067-6257
T +1 310 975 3300 · F +1 310 975 3400

1  Submitted: December 23, 2022

2

3                              ROPES & GRAY LLP
                             *Attorneys for Defendant University of Washington*

4
                             By */s/ Amy Jane Longo*
5                            Amy Jane Longo (Admitted *Pro Hac Vice*)
                             10250 Constellation Blvd.
6                            Los Angeles, CA 90067
                             Telephone: 310-975-3269
7                            Email: Amy.Longo@ropesgray.com

8
                             By */s/ Daniel V. Ward*
9                            Daniel V. Ward (Admitted *Pro Hac Vice*)
                             Prudential Tower
10                           800 Boylston St.
                             Boston, MA 02199
11                           Telephone: 617-951-7703
                             Email: Daniel.Ward@ropesgray.com
12

13                           By */s/ Phillip G. Kraft*
                             Phillip G. Kraft (Admitted *Pro Hac Vice*)
14                           1211 Avenue of the Americas
                             New York, NY 10036
15                           Telephone: 212-596-9150
                             Email: Phillip.Kraft@ropesgray.com
16

17                           By */s/ Logan Hovie*
                             Logan Hovie (Admitted *Pro Hac Vice*)
18                           2099 Pennsylvania Ave. NW
                             Washington, D.C. 20006
19                           Telephone: 202-508-4780
                             Email: Logan.Hovie@ropesgray.com
20

21                           DAVIS WRIGHT TREMAINE LLP
                             *Attorneys for Defendant University of Washington*
22

23                           By */s/ Sheehan Sullivan*
                             Sheehan Sullivan, WSBA # 33189
24                           920 Fifth Avenue, Suite 3300
                             Seattle, WA 98104-1610
25                           Telephone: 206-622-3150
                             Email: sulls@dwt.com
26

27

DEFENDANT UNIVERSITY OF WASHINGTON'S
OPPOSITION TO PLAINTIFFS' MOTION TO REMAND - 16
(2:22-cv-01555 BJR)

ROPES & GRAY LLP
10250 CONSTELLATION BOULEVARD
SUITE 1750
CENTURY CITY, CA 90067-6257
T +1 310 975 3300 · F +1 310 975 3400