UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARSHALL HORWITZ, DAVID LAYTON, RICHARD JOHNSON, and a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF WASHINGTON, an agency of the STATE OF WASHINGTON,<br><br>Defendant. | No. 2:22-cv-01555-BJR<br><br>ORDER GRANTING PLAINTIFFS' MOTION TO REMAND |

## I. INTRODUCTION

This putative class action was brought by Plaintiffs Marshall Horwitz, David Layton, and Richard Johnson ("Plaintiffs") against Defendant University of Washington ("UW" or "Defendant") in order to recover certain benefits they claim are owed to them and similarly situated UW faculty members and staff under UW's retirement plans. Presently before the Court is a motion filed by Plaintiffs to remand the action, for lack of subject matter jurisdiction, back to state court from which it was removed by Defendant. Dkt. 15 ("Mot."). Defendant opposes the motion. Having reviewed the pleadings, the record of the case, and the relevant legal authorities, the Court GRANTS Plaintiffs' motion. The Court's reasoning is set forth below.

ORDER - 1

## II. BACKGROUND

### A. Factual Background[1]

UW provides retirement benefits to its faculty members and staff through two separate retirement plans: the University of Washington Retirement Plan (the "UWRP") and the University of Washington Voluntary Investment Program (the "VIP"). Compl. ¶ 4. Each plan is governed by a written document setting forth the plan's terms. *See* Declaration of Amy Longo (Dkt. 14), Ex. A ("UWRP"); *id.*, Ex. B ("VIP"). Under the UWRP, eligible employees are required to participate in that plan by making mandatory contributions – in amount based on a preset percentage of their salaries – that are matched by UW. Compl. ¶¶ 5, 8-10. On the other hand, employees may participate in the VIP on a voluntary basis, by making additional elective contributions that are not matched by UW. *Id.* ¶¶ 11-12. Under both plans, employees' contributions are subject to contribution limits set forth in the applicable federal tax law. *Id.* ¶ 13.

Plaintiffs allege that, prior to 2018, UW informed plan participants if an individual elective contribution to the VIP would eventually cause them to exceed their annual retirement plan contribution limit based on their rate of matching contributions to the UWRP. Compl. ¶ 18. According to Plaintiffs, such warning would permit participants to reduce their unmatched VIP contributions going forward in order to avoid having their matching contributions later reduced – *i.e.*, as necessary to avoid exceeding the contribution limit. *Id.* However, in 2018, as a result of changes to UW's payroll system, UW ceased notifying plan participants of their excess contributions to the VIP, and instead began to reduce participants' matching UWRP contributions

---

[1] The facts recited below are taken from Plaintiffs' Complaint ("Compl.," Dkt. 1-1). The Court takes the factual allegations in the Complaint as true for purposes of the present motion.

ORDER - 2

to below the mandatory contribution percentages. *Id.* ¶¶ 25-27. Plaintiffs allege that this new practice resulted in their loss of certain matching contributions. *E.g.*, *id.* ¶¶ 33-35.

### B. Plaintiffs' Claim for Breach of Contract

Plaintiffs assert a claim for breach of contract, which they premise on an alleged "duty under tax law and under the plan contract to advise plan participants of any excess contributions so that they may correct those contributions." Compl. ¶ 22. While not stated explicitly, the Complaint implies that UW was also duty-bound under the plans to ensure that plan participants are able to maximize their matching contributions to the UWRP. *See, e.g.*, *id.* ¶ 28. Plaintiffs claim that, by failing to notify plan participants of their excess VIP contributions, and instead clawing back their mandatory UWRP contributions, UW violated its duty and thereby breached the retirement plans. *Id.* ¶ 97.

### C. Procedural Background

Plaintiffs filed this putative class action on September 22, 2022 in the Superior Court of Washington for King County. On November 2, 2022, Defendant removed the action to this Court on the ground that federal question jurisdiction exists pursuant to 28 U.S.C. § 1331. Dkt. 1. On December 2, 2022, Plaintiffs filed the present motion to remand the action back to state court. Defendant filed an opposition ("Opp.," Dkt. 19), and Plaintiffs replied ("Rep.," Dkt. 20).

### III. DISCUSSION

A defendant may remove to federal court any case filed in state court over which the federal court would have original jurisdiction. 28 U.S.C. § 1441(a). Federal question jurisdiction exists over "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A cause of action will "arise under" federal law "only if federal law 'creates the cause of

ORDER - 3

action' or a 'substantial question of federal law is a necessary element' of a plaintiff's well-pleaded complaint." *Newtok Vill. v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021) (quoting *Coeur d'Alene Tribe v. Hawks*, 933 F.3d 1052, 1055 (9th Cir. 2019)). While "most often, federal jurisdiction attaches when federal law creates the cause of action asserted[,] … even when 'a claim finds its origins' in state law, there is 'a special and small category of cases in which arising under jurisdiction still lies.'" *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 383 (2016) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). Courts use a four-part test – articulated by the Supreme Court in *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) – to determine whether a claim fits within that "special and small category of cases." Under that test, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258 (citing *Grable*, 545 U.S. at 314).

As the party asserting federal jurisdiction, the burden is on Defendant to establish that it is entitled to remain in federal court. *See Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992); *see also Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) ("The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper, and that the court resolves all ambiguity in favor of remand to state court." (citation and quotation marks omitted)). Defendant does not dispute that Plaintiffs' claim for breach of contract arises under Washington law, which governs both retirement plans. *See* UWRP at 13 § 9.7; VIP at 16 § 10.6. Defendant contends, however, that Plaintiffs' claim is premised on an alleged duty arising solely under federal law tax, thereby permitting federal jurisdiction to

ORDER - 4

attach. While Defendant argues that all of the *Grable* requirements are met, Plaintiffs contend that none are met.

The Court finds that Defendant fails to meet the first *Grable* requirement: that a federal issue is "necessarily raised" by Plaintiffs' claim. A federal issue is necessarily raised "where the vindication of a right under state law *necessarily* turn[s] on some construction of federal law." *Hornish v. King Cnty.*, 899 F.3d 680, 688 (9th Cir. 2018) (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 9 (1983)) (emphasis added). As such, "[w]hen a claim can be supported by alternative and independent theories – one of which is a state law theory and one of which is a federal law theory – federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996); *see Long v. Bando Mfg. of Am., Inc*., 201 F.3d 754, 761 (6th Cir. 2000) (holding that "complaint did not invoke the federal courts' 'arising under' jurisdiction, because it put forth alternate state and federal policies to support his state-law … claim"); *see also Manning v. Merrill Lynch Pierce Fenner & Smith, Inc*., 772 F.3d 158, 164 (3d Cir. 2014) ("even if Plaintiffs' claims were *partially* predicated on federal law, federal law would still not be necessarily raised") (emphasis in original), *aff'd*, 578 U.S. 374.

As noted above, Plaintiffs' claim that UW breached the retirement plans is premised on their allegation that UW had a duty "to advise plan participants of any excess contributions so that they may correct those contributions," and to enable plan participants to maximize their matching UWRP contributions. *See supra* at 3. Defendant argues that "the essence" of that alleged duty is certain federal tax law incorporated into the relevant plan provisions. Opp. at 6. As Defendant points out, the Complaint alleges that the plans, in their maximum contribution provisions, are

ORDER - 5

subject to Internal Revenue Code provisions setting forth applicable contribution limits. Compl. ¶ 19; *see* UWRP at 6 § 4.11; VIP at 4 § 4.4. The Complaint also alleges that the plans incorporate a procedure approved by the IRS – which is posted on an IRS webpage entitled, "Fixing Common Plan Mistakes" – for correcting excess contributions to retirement plans. Compl. ¶ 20. According to Defendant, the entire source of the duty alleged by Plaintiffs are these federal contribution limits and related claw-back procedures, such that Plaintiffs' claim turns on – and "necessarily raises" – a federal issue.

Even if, as Defendant contends, federal tax law were a source of the duty alleged by Plaintiffs, it would not be the only source. Quite the contrary, it is clear that the alleged duty primarily stems from language in the plans that create affirmative duties on UW's part without incorporating or otherwise relying upon tax law. Specifically, the Complaint cites a provision in the UWRP plan that expressly imparts on UW "a duty to 'advise' plan participants about excessive contributions." Compl. ¶ 17; *see* UWRP at 4 § 4.11 ("If the reduction is under this Plan, UW will advise the affected Participant of any limitations on his or her Plan Contributions required by this section."). The Complaint also alleges that certain plan provisions obligate UW to ensure that all UWRP contributions are ultimately matched. In particular, the Complaint cites a contractual "promise to provide matching contributions percentages" (Compl. ¶ 28), which Plaintiffs contend is grounded in a UWRP provision that mandates specified contributions into that plan, and then states that "UW will make a matching contribute on equal to each Participant contribution." UWRP at 4 § 4.1; *see Duncan v. Alaska USA Fed. Credit Union, Inc.*, 148 Wash. App. 52, 63 (Wn. Ct. App. 2008) ("the word 'will' has been held to be mandatory, not discretionary"). The Complaint also cites a VIP plan provision stating that VIP contributions are "in addition to any

ORDER - 6

contributions which may be made to the [UWRP]." Compl. ¶ 12 (quoting VIP at 3 § 4.1). All of this language cited in the Complaint, which does not incorporate or otherwise rely upon federal tax law, suggests obligations on UW's part to notify plan participants about excess contributions and ensure that the UWRP contributions they are required to make are matched.

Confronting these provisions, Defendant argues that the UWRP and VIP plans "disclaim any claw-back duty" by virtue of language in those plans granting UW the "sole discretion" to determine the manner in which excess contributions will be handled. Opp. at 2; *see* UWRP at 6 § 4.11 (providing that "the extent to which annual contributions under [UWRP] will be reduced … will be determined by UW," and "UW may, in its sole discretion, cause any contribution in excess of the foregoing limitations … to be returned to UW or distributed to the Participant"); VIP at 4 § 4.5 (providing that "UW may, in its sole discretion, cause any VIP Contribution in excess of the foregoing limitations … to be distributed to the Participant"). According to Defendant, that disclaimer eliminates any contractual duty concerning the handling of excess contributions, and therefore any duty to ensure that participants maximize their UWRP contributions could arise only under federal tax law.

Defendant's argument lacks merit. As an initial matter, it makes little sense. If the "sole discretion" language operated in the way proposed by Defendant, then UW would have no duty whatsoever – whether based on terms that incorporate federal tax law or terms that do not – with respect to participants' excess contributions. Moreover, that language does not, as Defendant contends, "disclaim any claw-back duty" on UW's part. "Ordinary contract principles require that, where one party is granted discretion under the terms of the contract, that discretion must be exercised in good faith – a requirement that includes the duty to exercise the discretion

ORDER - 7

reasonably." *Curtis v. N. Life Ins. Co.*, 147 Wash. App. 1030 (Wn. Ct. App. 2008) (quoting *Craig v. Pillsbury Non-Qualified Pension Plan*, 458 F.3d 748, 752 (8th Cir. 2006) (applying Washington law)). Thus, a party to a contract may violate the duty of good faith and fair dealing, existing under all contracts, when that party "abuse[s] discretion granted under the contract." *Microsoft Corp. v. Motorola, Inc.*, 963 F. Supp. 2d 1176, 1184 (W.D. Wash. 2013) (citing Restatement (Second) of Contracts § 205 cmt. d); *see, e.g.*, *Tymshare, Inc. v. Covell*, 727 F.2d 1145, 1154 (D.C. Cir. 1984) (provision in compensation plan permitting employer "sole discretion" to make changes did not permit changes "for any reason whatsoever, no matter how arbitrary or unreasonable."). In accordance with these principles, UW maintained a contractual duty to use good faith in its handling of participants' excess contributions. What that duty practically entailed, and whether UW breached it, is a question that will ultimately be left to a fact finder. *See McDermott v. Avaya, Inc.*, No. 13-cv-6050, 2015 WL 1650291, at *5 (W.D. Wash. Apr. 14, 2015) ("[I]t is the fact finders job to determine whether a party breached its duty of good faith and fair dealing."). Finally, even if the "sole discretion" language did eliminate any duty concerning how to handle excess contributions, it would not affect Defendant's contractual duty to advise plan participants of them. *See* Compl. ¶ 17.

In view of the identified plan provisions that do not incorporate federal tax law, and the duty of good faith and fair dealing implied in the plans, the Court finds that the Complaint articulates an independent contractual duty on UW's part to advise plan participants of – and take certain actions to address – excess contributions. Although the precise contours of UW's duty will be determined at a later time, and may ultimately be shaped in part by reference to federal tax law, it is clear that Plaintiffs' breach-of-contract claim is independently supported by ordinary

ORDER - 8

contractual obligations. Plaintiffs' claim, therefore, is supported by an independent state law theory, and accordingly does not "necessarily" turn upon the construction or application of federal law. *See, e.g.*, *New Mexico ex rel. Balderas v. Purdue Pharma L.P.*, 323 F. Supp. 3d 1242, 1252 (D.N.M. 2018) (remanding where state law claims could be based on duties arising under state or federal law; "While a determination of a duty and violation of that duty under [federal law] will likely occur in examining Plaintiff's claims, so also will examination of New Mexico [law] to determine Defendants' duty"); *West Virginia ex rel. Morrisey v. McKesson Corp.*, No. 16-cv-1772, 2017 WL 357307, at *8 (S.D.W. Va. Jan. 24, 2017) (remanding case because federal law was not "the only possible source of a putative duty").

Having found that a federal issue is not "necessarily raised" by Plaintiffs' claim, the Court lacks federal question jurisdiction over this case.[2] Absent any other demonstrated source of federal jurisdiction, the Court will remand this action back to state court.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to remand (Dkt. 15) is GRANTED. This matter is hereby remanded to the Superior Court of Washington for King County.

SO ORDERED.

Dated: February 2, 2023

Barbara Jacobs Rothstein
U.S. District Court Judge

---

[2] Given the Court's finding that a federal issue is not "necessarily raised," the Court need not address whether the remaining *Grable* requirements are met.

ORDER - 9